# 𝕽𝕚𝖈𝖍𝖒𝖔𝖓𝖉.

## VIRGINIA HOT SPRINGS COMPANY V. LOWMAN.

### November 20, 1919.

### Absent, Sims, J.

1. TURNPIKES AND TOLLROADS—*Dedication—New Use.*—The purpose of the dedication of land for a right of way to a turnpike company was to provide a right of way for a turnpike to facilitate travel. The methods of travel in vogue at the time of the dedication were on foot, horseback, or in animal-drawn vehicles, and the pike was used for these purposes. But the fact that new methods of travel have been discovered and are in common use, for example, by automobile, does not create a new or different use from that for which the dedication was made.

2. DEDICATION — *Prescription — Highways — Width of Road.*—The width of a public road acquired by prescription, in the absence of any evidence as to the nature and extent of the dedication under which the prescriptive right was acquired, is confined to and is the width of such road as is in use by the public, including the side ditches and slopes, in addition to the roadbed or traveled portion of the roadway.

3. STREETS AND HIGHWAYS—*Prescription—Width of Way and Extent of Use.*—If a right of way depends *solely upon the user,* then the width of the way and the extent of the user is measured by the character of the user, for the easement cannot be broader than the user, and a right of way acquired for one purpose cannot be used for another. But if the new use is in all respects of the same nature and character as the old, and the difference is in degree only, and no additional burden is put upon the servient estate, then the new use is within the prescriptive use.

4. STREETS AND HIGHWAYS—*Dedication—Width.*—In determining the width of a public highway, not shown by any written memorial, the extent of the dedication, when it can be shown, is of the utmost importance.

5. DEDICATION—*Acceptance—Express or Implied.*—Both dedication and acceptance may be express or implied.

6. STREETS AND HIGHWAYS—*Adverse Possession Against the Public—Turnpike Company or Public Road—Limitation of Actions Against the State.*—Where a road was constructed as a turnpike under authority of statute, and the right to take tolls was granted to a private or semi-private corporation, the turnpike, when established, is a public road, and when the dedication of the right of way for it was accepted, it became complete, and the rights of the public therein became fixed, and no encroachments thereon by former owners, or their successors in title, or by any one else, could impair the rights of the public therein, unless the way so dedicated was abandoned by proper authority. Nor can title to any part of such highway be acquired by adverse possession, as the statute of limitations does not run against the State, unless expressly mentioned.

7. TURNPIKES AND TOLLROADS—*Dedication—Extent of Dedication.*—Where a pike was enclosed by fences on both sides thereof, the use of the land within the enclosures by the turnpike company, digging and removing soil for repairs, the widening of the driveway without objection, and especially the location of the fences on each side of the pike, raised a very strong presumption, in the absence of evidence to the contrary, that the adjacent landowners intended to dedicate so much of the land between those enclosures as was reasonably necessary for the convenient and safe operation of the pike. It was apparently set apart for that purpose, and to be used from time to time as the exigencies of the public travel might require.

8. TURNPIKES AND TOLLROADS—*Dedication—Extent of Dedication.*—It is not necessary that the whole dedication of a way for a turnpike should be used by the public when the pike is first constructed. The acceptance of the whole dedication is sufficiently evidenced by the construction of the pike on a part thereof, and the subsequent use of other parts as needed.

9. STREETS AND HIGHWAYS — *Dedication — Rences.* — Permanent fences, long maintained on either side, earmark a public highway, and indicate that the adjacent owners intent to dedicate the land within the enclosures to the public use. The acts of the adjacent owners in continuing the enclosures, and their failure to exercise any acts of ownership over the land within the fences, constitute a continuing dedication of the land so enclosed.

10. DEDICATION—*Acceptance—Implied Dedication—Continued Use.*—Long-continued use of a right of way by the public may constitute acceptance of an implied dedication, and the effect

54

of this acceptance is to create an irrevocable dedication as between the owner and his alienees and the public.

11. DEDICATION — *Acceptance* — *Time of Acceptance.* — Acceptance need not follow the offer of dedication at once. It is sufficient if made within a reasonable time and before the withdrawal of the offer.

12. TURNPIKES AND TOLLROADS—*Use of Right of Way—Construction of Bridle Path.*—A turnpike company having the right to construct a bridle path on its right of way has the right to determine the location of the bridle path, provided it keeps within the limits of the right of way dedicated and imposes no additional burden on the property of an adjacent landowner.

13. TURNPIKES AND TOLLROADS—*Bridle Path—New and Different Use.*—A bridle path paralleling the road-bed of a turnpike is not a new and different use of the land dedicated for the pike, but is in aid of the original use, making the driveway safer for all classes of travelers, and its construction does not necessarily create any new or greater burden on the lands of the adjacent proprietors, where it is wholly within the limits of the land apparently dedicated to the turnpike.

14. TURNPIKES AND TOLLROADS—*Change of Grade—Damage to Adjacent Owners—Section 58, Constitution of 1902.*—Where a turnpike company constructed a bridle path parallel to its roadbed upon land dedicated to it for a right of way, an adjacent owner is entitled to compensation for damage to the residue of his property by reason of a change in the grade under section 58 of the Constitution of 1902.

15. EMINENT DOMAIN—*Constitutional Law—Section 58, Constitution of 1902—Self-Executing.*—Section 58 of the Constitution of 1902, providing for compensation where private property is taken or damaged, is self-executing.

16. EMINENT DOMAIN—*Section 58, Constitution of 1902—Land Damaged, But Not Taken—Injunction.*—Where no part of a landowner's property was taken by a turnpike company, but damage to the land was alleged, just compensation can be readily made in damages, and the landowner would not ordinarily be entitled to relief by injunction, but only to proceed in an action at law, or in such other manner as may be prescribed by statute, to recover the damages sustained.

17. TURNPIKES AND TOLLROADS—*Change of Grade—Constitution of 1902, Section 58.*—Section 58 of the Constitution of 1902 did not take away from a turnpike company the right to change the grades of the pike, but only provides that just compensation shall be made for the damages resulting therefrom. Neither the Constitution nor any statute points out the remedy, but the common law affords an appropriate remedy.

18. TURNPIKES AND TOLLROADS—*Damage to Adjoining Landowners —Injunction.*—Where a turnpike company in constructing a bridle path on its right of way, while keeping within the right of way, cut its land down in some places in such manner as to remove the support for the adjacent land of an adjoining landowner, and of fences lawfully erected on his land, the damage is insignificant and can be readily compensated in damages, and the landowner cannot enjoin the company.

19. EMINENT DOMAIN—*Taking Private Property for Public Use— Injunction.*—Usually injunction is the proper remedy to prevent the "taking" of private property for a public use by one who is invested with the power of eminent domain.

20. TURNPIKES AND TOLLROADS—*Change of Grade—Damage to Adjoining Landowner—Injunction.*—In the instant case there was no "taking," but it was claimed that the construction by the turnpike company of a bridle path on the land dedicated to the public use would damage a landowner in the use and enjoyment of the residue of his property adjacent thereto, because the bridle path was constructed on a different grade from the roadbed.

*Held:* That if the proposed change of grade was not within the dedication, it stood on no higher footing than a trespass, for which an action at law might be maintained, and injunction would not lie against the company.

Appeal from a decree of the Circuit Court of Bath county, Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Allen & Walsh* and *J. T. McAllister,* for the plaintiff in error.

*J. M. Perry* and *J. W. Stephenson & Son,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is an injunction suit brought by Jos. F. Lowman against the Virginia Hot Springs Company to enjoin the latter from grading a bridle path four feet wide by the side of the driveway of its turnpike, for use by pedestrians and horseback riders. The trial court granted the perpetual injunction prayed for, and from that decree this appeal was taken.

The road was originally constructed between 1856 and 1859 as a turnpike, and the right to take tolls thereon was accorded in 1859. Tolls were taken thereon by the predecessor in title of the appellant, and the latter, since it acquired title, has been, and still is, taking tolls thereon. Under the general turnpike act of 1887 (Rev. Code 1819 ch. 234), a turnpike company could not condemn the fee in land for its purposes, but only the right of way. The former owner still held title to the land subject to the easement.

The appellant was unable to show title to its right of way either by grant or condemnation, but was compelled to rely upon long user, founded upon dedication and acceptance. The appellant insisted that the road was originally constructed by the Jackson River Turnpike Company under its charter which required it to take and clear a right of way sixty feet wide at the least. The appellee, on the contrary, contended that the road was constructed under a charter to the Hot Springs and Miller's Mill Turnpike Company which allowed the construction of a road "not less than 16 feet, exclusive of side ditches;" each party claiming a presumption of dedication of the width allowed by the charter of the company constructing the road. This point of difference was hotly contested by the parties, and they took evidence to support their respective contentions. The trial court took the view that the construction was not under Jackson River Company's charter, but was probably under the charter of the Hot Springs and Mil-

ler's Mill Company. In the view we take of the case, it is unnecessary to decide that question, for in either view of the case the injunction ought not to have been granted.

That there was a dedication and acceptance of a right of way for the turnpike is not disputed, and the turnpike has been in active operation, as such, for over half a century. The only question in controversy is the extent of that dedication and acceptance.

Drawings filed with the testimony of witnesses and also their testimony, show that the turnpike is enclosed by fences on both sides through the lands of appellee and others, and apparently for its whole length. What the appellant proposed to do, and was engaged in doing, at the time the injunction was awarded, was to construct a way four feet wide for the use of persons riding horseback and for pedestrians. This way was being constructed wholly within the fence enclosures of the pike, by cutting benches in the cuts and fills of the existing roadbed, where necessary, and at other places making necessary cuts and fills within said enclosures. These cuts and fills varied in depth and height from a "feather's edge" to four feet. In some places the adjacent landowner had erected his fence on the fill of the original roadbed several feet from the bottom of the fill, and when perpendicular cuts were made in such fills, it left exposed and liable to fall down the posts of the fence erected thereon.

[1, 2] The purpose of the dedication was to provide a right of way for a turnpike to facilitate travel. The methods of travel then in vogue were on foot, on horseback, or in vehicles drawn by animals, and the pike was used for these purposes. But the fact that new methods of travel have been discovered and are in common use, for example by automobile, does not create a new or different use from that for which the dedication was made, nor do we understand that any such claim is made, but the

claim is that the building of the bridle path is a new and different use from that acquired by prescription, and also that having built one road in pursuance of the dedication, the appellant cannot now build another, to-wit: a bridle path for the purposes aforesaid.

In *Supervisors* v. *Norfolk & W. R. Co.*, 119 Va. 763, 91 S. E. 124, Judge Sims has very fully and clearly set forth the views of this court on the subject of the width of a public road acquired by prescription, in the absence of any evidence as to the nature and extent of the dedication under which the prescriptive right was acquired. After a very full examination and consideration of the authorities, he says: "Our conclusion, therefore, is that the width of the public road in question at the time the railway company made changes in its location was confined to, and was the width of, such road as was in use by the public at that time, including the side ditches and slopes, in addition to the roadbed or traveled portion of the roadway." It will be observed that the width of the road includes "the side ditches and slopes" as well as "the roadbed, or traveled portion of the roadway."

[3] The law seems to be well settled that if a right of way depends *solely upon the user*, "then the width of the way and the extent of the user is measured by the character of the user, for the easement cannot be broader than the user," and that a right of way acquired for one purpose cannot be used for another. *Columbia* v. *Robinson*, 180 U. S. 92, 100, 21 Sup. Ct. 283, 45 L. Ed. 440; Elliott on Roads, p. 136; Jones on Easements, secs. 291, 292, and cases cited. But if the new use is in all respects of the same nature and character as the old, and the difference is in degree only, and no additional burden is put upon the servient estate, then the new use is within the prescriptive use. *Baldwin* v. *Boston & M. R. Co.*, 181 Mass. 166, 63 N. E. 428.

[4, 5] In determining the width of public highways, not shown by any written memorial, the extent of the dedication when it can be shown is of the utmost importance. Both dedication and acceptance may be express or implied. As said by Judge Riely, in *Buntin* v. *Danville*, 93 Va. 200, 204-5, 24 S. E. 830; "Dedication is an appropriation of land by its owners for the public use. It may be express or implied. It may be implied from long use by the public of the land claimed to have been dedicated. Dedication is not required to be made by a deed or other writing, but may be effectually and validly done by verbal declarations. The intent is its vital principle, and the dedication may be made in every conceivable way that such intention may be manifested. It must, however, be manifested by some unequivocal act, and is not effectual and binding until accepted. When the intention of the owner to make the dedication has been unequivocally manifested, and there has been acceptance by competent authority, or such long use by the public as to render its reclamation unjust and improper, the dedication is complete. *City of Richmond* v. *A. Y. Stokes & Co.*, 31 Gratt. (72 Va.), 713; *Talbott* v. *R. & D. R. R. Co.*, 31 Gratt. (72 Va.), 685; *Harris's Case, supra*, 20 Gratt. (61 Va.), 833; *Kelly's Case*, 8 Gratt. (49 Va.), 632; *Hall* v. *McLeod*, 2 Metc. (Ky.), 98 [74 Am. Dec. 400]; *Harding* v. *Jasper*, 14 Cal. 642; *Morgan* v. *Railroad Co.*, 96 U. S. 716, [24 L. Ed. 743]; *Dovaston* v. *Payne*, 2 Smith's Lead. Cas. 213, and notes thereto; *State* v. *Trask*, [6 Vt. 355], 27 Am. Dec. 554, and the note thereto; 2 Greenleaf on Ev., sec. 662; and Wash. on Easements, 180 and 184.

"And when it is complete, it is irrevocable. No obstruction of the subject of the dedication, or encroachment upon it by the original owner of the soil, or by any one else will affect the dedication, or impair the right of the public to its benefits, unless the land so dedicated has been aban-

doned by the public, or by the proper authority. *Harris'*
*Case, supra; Skeen* v. *Lynch,* 1 Rob. (40 Va.) 186; *City*
*of Cincinnati* v. *Lessee of White,* 6 Pet. 431 [8 L. Ed. 452];
*Adams* v. *Railroad Co.,* 11 Barb. [N. Y.] 414; *Cook* v. *Har-*
*ris,* 61 N. Y. 448; *City of Dubuque* v. *Maloney,* 9 Iowa 455
[74 Am. Dec. 358]; Washburn on Easements, 188, and
cases there cited; and Elliott on Roads and Streets, 132."

[6] The road in controversy in this case was constructed
as a turnpike under authority of statute, and the right to
take tolls thereon was granted to a private or semi-private
corporation and is now owned by a private corporation.
The interest of the present owner is its franchise of taking
tolls, subject to the burden of maintaining the road. The
road, however, when established, was, and thence hitherto
has been, and still is, a public road. 1 Elliott on Roads and
Streets, secs. 79, 81, and cases cited. When the dedication
of the right of way was accepted, it became complete, and
the rights of the public therein became fixed, and no en-
croachments thereon by former owners, or their successors
in title, or by any one else, could impair the rights of the
public therein unless the way so dedicated was abandoned
by proper authority. Nor can title to any part of said high-
way be acquired by adverse possession, as the statute of
limitations does not run against the State unless expressly
mentioned. *Buntin* v. *Danville, supra.*

[7, 8] At the time the appellee purchased his land, the
pike was enclosed by fences on both sides thereof, and at
the time he testified those fences had been there for twenty
years or more. Just how long those enclosures had been
there does not appear, but the intimations are that they
had been there for a much longer period, as no witness
speaks of a time when they did not exist. A blue print
filed and identified by a surveyor shows the enclosures on
both sides of the pike through the land of the contestants,
if not for the whole length of the pike, and the appellee

purchased his land with these enclosures there and sold off a part of it with this pike or road given as one of its boundaries in each instance, and soil has been dug and removed from the fence corners for repairs to the pike, and the macadam driveway has been widened without objection from any source. This use of the land within the enclosures and especially the location of the fences on each side of the pike in controversy raises a very strong presumption, in the absence of evidence to the contrary, that the adjacent land owners intended to dedicate so much of the land between those enclosures as was reasonably necessary for the convenient and safe operation of the pike. It was apparently set apart for that purpose, and to be used from time to time as the exigencies of the public travel might require. It was not necessary that the whole of it should have been put to that use when the pike was first constructed. Travel was then comparatively light, and its use was not then needed. But the acceptance of the whole dedication was sufficiently evidenced by the construction of the pike on a part thereof, and the subsequent use made of other parts. This view of the extent of the dedication is also shown by the testimony of one of the witnesses for the appellee, who is also a party to a similar suit against the appellant involving this same question. He testifies that, "With the exception of allowing the Hot Springs Company to use clay dug off the bank in two places along the road, we have always exercised control over that road extending from the side ditches to our fences. At that time we thought the Hot Springs owned more right of way than we now think they own. We thought then they owned the right of way from fence to fence. We had not investigated then and didn't know." Thus showing that the present claim is of recent origin. The same witness admits that the bridle path is constructed wholly within the fences enclosing the pike, and that he never got the

55

information that led him to believe that appellant did not own from fence to fence until "soon after the construction of the bridle path was begun."

[9] In *Benton* v. *City of St. Louis*, 217 Mo. 687, 118 S. W. 418, 129 Am. St. Rep. 561, in discussing the extent of a dedication, it is said that "permanent fences, long maintained on either side, earmark a public street," and that the practical abandonment of the whole fifty-foot strip for many years by "the abutting property owners, and their failure to impress upon the strip the usual earmarks of private use and ownership, like possession, alienation, cultivation, etc., lend force to the conclusion by leading up to it." These remarks apply with peculiar force to the case at bar, and we are satisfied that the adjacent owners intended to dedicate the land within the enclosures to the public use for the purposes of the turnpike. The acts of the adjacent owners in continuing the enclosures, and their failure to exercise any acts of ownership over the land within the fences, constituted a continuing dedication of the land so enclosed, which has been accepted by the appellant and cannot now be recanted.

[10, 11] Some nice distinctions have been drawn by the courts about acceptance of an implied dedication by long continued use of the right by the public, but that the acceptance may be so made seems to be sustained by the weight of prevailing current opinion. See cases cited in 129 Am. St. Rep. 609. The effect of this acceptance is to create an irrevocable dedication as between the owner and his alienees and the public. *Hast* v. *Railroad Co.*, 52 W. Va. 396, 44 S. E. 155; *Harper's Ferry* v. *Kaplon Bros.*, 58 W. Va. 482, 52 S. E. 492. But the acceptance need not follow the offer of dedication at once. It is sufficient if made within a reasonable time and before the withdrawal of the offer. *People* v. *Johnson*, 237 Ill. 237, 241, 86 N. E. 676. Where the acts of dedication show a continuing offer

of dedication, it is not necessary that the acceptance should be evidenced by an immediate use and occupation of the whole of the land dedicated, but if a part of it is so used and occupied, with no indication of an intention to refuse or to abandon the residue, the use and occupation of such residue may be postponed until the public necessity or convenience requires its use. *Meridian* v. *Poole,* 88 Miss. 108, 40 So. 548.

In *Village of Lee* v. *Harris,* 206 Ill. 428, 69 N. E. 230, 99 Am. St. Rep. 176, it was held that acceptance by a city or village of some of the streets and alleys appearing on a plat is an acceptance of the entire system of streets and alleys so appearing, unless an intention to limit the acceptance is shown. It was further said: "The immediate opening and use, by the public, of all the streets in ground laid out and platted into lots, for their entire length, or an immediate formal acceptance by some competent public authority, is not necessary to give effect to the dedication of land to the public use, of a street, by the making of a town plat and the selling of lots with reference to the plat. The public authorities must be allowed a reasonable time for opening and improving public streets, as their resources and the public necessity may allow and require."

What we have said on this subject is intended to be limited to dedication and acceptance as between the adjacent owner and his alienees, on the one side, and the public on the other.

[12] When the pike was first constructed it became necessary to make cuts and fills, and these had to have the proper slopes to prevent caving and to furnish proper supports for the road-bed. Certainly the appellant and those under whom it claims title acquired the right to so use them by prescription. The appellee does not deny this, but insists that the nature of this use must continue to be the same in the future as in the past, and that appellant has

no right to cut benches in either in order to construct said bridle path. He insists that there is plenty of room on the side of the macadam roadbed to put the bridle path there on grade with the driveway, and that it should be placed there. This is, of itself, a concession of the right of the appellant to build a bridle path. Having this right, it is for the appellant to determine its location, provided it keeps within the limits dedicated and imposes no additional burden on the property of the appellee. In the view we have taken of the case, however, it is unnecessary to consider this question further.

It appears from the testimony that this road is three miles in length; that it has in recent years been widened and treated with asphalt; that travel on it has greatly increased; that the road-bed is very hard and smooth and at times very slick, and as a result thereof horses when ridden thereon frequently fall, and hence it is desirable to construct a dirt road, which will at once furnish a safe road for persons riding and will also provide a suitable and safe way for foot passengers. As the driveway of the pike is narrow, and automobiles are frequently passing each other thereon, it was deemed best to put the bridle path a little removed from the driveway and thus furnish greater safety to those using it.

[13] The bridle path is not a new and different use of the land dedicated, but is in aid of the original use, making the driveway safer for all classes of travelers, and its construction would not necessarily create any new or greater burden on the lands of the adjacent proprietors. It is wholly within the limits of the land apparently dedicated to the turnpike, and the appellee has no right to an injunction, under the circumstances of the case.

[14-17] The appellee claims that even if the appellant keeps within its enclosure, the residue of his property will be damaged by reason of the change in the grade of the

riding path. If this be true, he is entitled to compensation therefor under the provisions of the Constitution of 1902, which is self-executing. Va. Constitution, sec. 58; *Swift & Co.* v. *Newport News,* 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404. But as no part of his land is taken and "just compensation" can be readily made in damages, he would not ordinarily be entitled to relief by injunction, but only to proceed in an action at law or in such other manner as may be prescribed by statute, to recover the damages sustained, and there is no suggestion of the existence of any peculiar circumstances which would take the case out of the general rule. *Swift & Co.* v. *Newport News,* 105 Va. at pages 114-115, 52 S. E. 821, 3 L. R. A. (N. S.) 404; *Miller* v. *Wills,* 95 Va. 337, 28 S. E. 337. The Constitution did not take away from the turnpike company the right to change the grades of the pike, but only provides that just compensation shall be made for the damages resulting therefrom. Neither the Constitution nor any statute points out the remedy, but the common law affords an appropriate remedy. *Swift & Co.* v. *Newport News, supra.*

[18] There was also evidence in the cause tending to show that the appellant, while keeping within its bounds, has cut its land down in some places in such manner as to remove the support for the adjacent land of the appellee, and of fences lawfully erected on his land; but, so far as disclosed by the record, the damage of this kind is insignificant and can be readily compensated in damages.

[19, 20] Usually injunction is the proper remedy to prevent the "taking" of private property for a public use by one who is invested with the power of eminent domain. See cases cited in 10 R. C. L., sec. 193. In the case at bar, however, there is no "taking", but it is claimed that the construction by the appellant of the bridle path on the land dedicated to the public use will "damage" the appellee in the use and enjoyment of the residue of his property ad-

jacent thereto. If this be true, and the proposed change of grade is not within the dedication, it stands on no higher footing than a trespass for which an action at law may be maintained, and the injunction should not have been perpetuated upon the evidence adduced.

We are of opinion that the decree of the circuit court should be reversed, the injunction awarded by it dissolved, and the bill of the appellee dismissed, but without prejudice to his right to maintain an action at law to recover such damages, if any, as he has sustained or may sustain by reason of the change of grade of the turnpike, or any part thereof, or by reason of the removal by the appellant of the lateral support of the land of the appellee, or of the structures thereon, if any.

*Reversed.*