## Richmond

J. A. ANDERSON, COMMISSIONER, VIRGINIA DEPARTMENT OF HIGH-
WAYS, COMMONWEALTH OF VIRGINIA v. STUARTS DRAFT
WATER COMPANY, INCORPORATED.

June 13, 1955.

Record No. 4409.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General; Francis C. Lee, Assistant Attorney General* and *M. Harris Parker,* for the plaintiff in error.

*Wayt B. Timberlake, Jr.* and *Lyle G. Weller,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The State Highway Commissioner brought this declaratory judgment proceeding, Code § 8-578, to have an adjudication of his rights with respect to lowering the grade of a road as against the right asserted by the appellee, Stuarts Draft Water Company, Incorporated, to occupy the subsurface of the road within the right of way with its pipe line. The issue developed was whether the pipe line must be removed or relocated at the expense of the Highway Department or of the Water Company. The court below held with the appellee and the Commissioner appeals.

From the evidence and the stipulation of facts it appears that the Highway Department planned to improve State Route 608, which runs through the village of Stuarts Draft in Augusta county, and the plans called for a lowering of the present grade in places below the level of the pipe line.

Route 608, in the area here involved, was originally acquired as a thirty-foot right of way by the Howardsville Turnpike Company under the Turnpike Act of 1817. Acts 1816-17, ch. 38, p. 41; Code

1819, Vol. II, ch. 234, p. 211. Sections 6 and 7 of that act provided that if a turnpike company could not agree with the owner of the land on the terms on which the road was to be opened, the county court would appoint freeholders who would assemble on the land and ascertain the damages which the proprietor would sustain. Section 8 of the act provided:

"* * In performing this duty, they shall consider the proprietor of the land as being the owner of the whole fee simple interest; they shall take into consideration the quantity and quality of the land which the road will occupy, the additional fencing which will be required thereby, and all other inconveniences which will result to the said land from the opening of the said road, and shall combine therewith a just regard to the advantages which the owner of the land will derive from the opening of the road through the same."

Section 14 provided that the road should be made sixty feet wide at least, eighteen feet of which should be well covered with gravel or stone, to be kept firm and smooth, and in all respects fit for use of heavily laden wagons and other carriages, and on each side a summer road eighteen feet wide should be cleared and kept in good repair.

Howardsville Turnpike Company was incorporated by act of February 17, 1846, Acts 1845-46, ch. 126, p. 95, and made subject to the provisions of the Turnpike Act of 1817, but not compelled to pave the road with stone or gravel, or to make it more than thirty feet wide, or to make a summer road thereto.

The road was constructed by the Turnpike Company about 1848 to a width of approximately thirty feet, but whether the right of way was acquired by agreement or by condemnation is not disclosed. From the time of its construction it was operated by the Turnpike Company until 1864, when it was taken over by the county of Augusta and maintained by it as part of its road system until 1932 when it was incorporated into the State Secondary System of Roads by the Act of Assembly of 1932. Acts 1932, ch. 415, p. 872. It is the present location of State Routes 608 and 610.

The pipe line in question was installed by W. B. Dodge in 1897 along and under the thirty-foot right of way of this road from a point south of Stuarts Draft northerly to the junction of Route 608 and Stuart street in the village of Stuarts Draft, under easements or permits granted to him by the owners of the underlying fee by

deeds of record. The Water Company has succeeded to the easements so granted by deed also of record.

The pipe line has been maintained and operated in its present location since 1897 except in 1913 when the road was macadamized. In the process of that work the pipe line was uncovered, and it was then lowered at the expense of W. B. Dodge, its then owner.

Under the present improvement the alignment of the road is not to be changed but the grade is to be raised or lowered at points on the original right of way, and the lowering requires the relocation of the pipe line in some places. Also at places the right of way is being widened to forty feet and the additional width has been acquired in fee by the Highway Department.

The trial court was of the opinion that the easement or permit for the pipe line under the road so granted to the Water Company constituted property which could not be taken away without the just compensation required by § 58 of our Constitution when property is taken or damaged for public uses. In support of that holding the Water Company relies on *Swift & Co.* v. *Newport News*, 105 Va. 108, 52 S. E. 821; *Nelson County* v. *Loving*, 126 Va. 283, 101 S. E. 406, and *Virginia Hot Springs Co.* v. *Lowman*, 126 Va. 424, 101 S. E. 326. These cases dealt with abutting property owners and declared their right to compensation under the Constitution when a change of grade in a street or road resulted in damage to their adjoining property.

In the last-named case, *Virginia Hot Springs Co.* v. *Lowman*, it was sought to enjoin the appellant from constructing a bridle path by the side of the driveway of its turnpike road. There the court rejected the contention of Lowman that the method of using the road must continue to be the same in the future as in the past, and refused the injunction on the ground that the bridle path was not a new and different use of the land dedicated for the road but was in aid of the original use, "making the driveway safer for all classes of travelers, and its construction would not necessarily create any new or greater burden on the lands of the adjacent proprietors." 126 Va. at 436, 101 S. E. at 330.

It was further said in that case that when the dedication of the right of way was accepted it became complete, the rights of the public then became fixed and no encroachments thereon by former owners or their successors in title could impair the rights of the public therein, nor could title to any part thereof be acquired by

adverse possession. Responding to Lowman's contention that although the appellant kept within its enclosure, yet the grading of the bridle path would damage his adjacent property, the court said that if so he would be entitled to compensation under the doctrine of the *Swift* case. It was also held in the *Lowman* case that under the Turnpike Act of 1817 the Turnpike Company could not condemn the fee in land for its purposes but only a right of way, and that the former owner still held title to the land subject to the easement. See also *Jordan* v. *Eve*, 72 Va. (31 Gratt.) 1, 10; *Bond* v. *Green*, 189 Va. 23, 32, 52 S. E. (2d) 169, 173.

It is the nature and extent of that easement which is in controversy in the present case. The appellee asserts in its brief that the owners of the fee in 1897 "had an absolute right to the use and enjoyment of the land beneath the then existing roadbed." If they had so broad a right they could, of course, convey a valid easement to their grantee to install the pipe line; but we do not think their right was so unlimited.

Even in a case of damage to adjacent property caused by lowering of the road in front of it, *Nelson County* v. *Loving, supra*, (126 Va. at 304, 101 S. E. at 413), the court was careful to leave open the question of whether damages due to a subsequent change of grade were in fact paid, or would be presumed to have been paid, when the right of way was acquired. It was flatly so held in *Pillings* v. *Pottawattamie County*, 188 Iowa 567, 176 N. W. 314. There the road had been established and in actual public use for more than forty years. The court presumed that the damages resulting from the taking of the land were then paid or waived, and said:

"* * The right so acquired by the public was not simply to travel over or upon the natural surface of the land within the limits of the road. It acquired, as well, the right to improve such way; and, in the very nature of things, this included improvement of the grades, so far as is reasonably practicable, by cuts upon the elevations and fills upon the low lands. * *." 188 Iowa at 570, 176 N. W. at 316.

To like effect is *Psota* v. *Sherman County*, 124 Neb. 154, 158, 245 N. W. 405, 406, holding, in accord with 29 C. J. 544, that on the laying out of a highway the public acquire not only the right of way, but also the powers and privileges incident to that right, including the right to raise or lower the surface in order to make and keep the way safe and convenient for public travel. See also C. J. S., Highways, § 138 b., p. 1076.

We are in accord with the view expressed in those two cases that upon acquiring a right of way for a road the public right is not narrowly limited to passing over the surface as then made but extends to making reasonable improvements in the grade to make the road safer and more convenient for public travel by the methods in common use at the time of the improvement; but we limit our approval of their holdings to the facts of the present case where only rights in the subjacent soil are involved.

The public easement is coextensive with the limits of the highway and the public right is not limited to the surface of the highway but extends both upward and downward for a distance sufficient to accommodate, as well as to protect, all proper uses to which the way is subject. Where the owner of land dedicates it to the public for a road, he impliedly grants the attendant or incidental right to make such use of it as shall suitably fit it for travel. 25 Am. Jur., Highways, § 53, p. 369; § 166, p. 461; § 198, p. 497; Annotation, 11 A. L. R. (2d) at 184-5; *Wheeler* v. *City of Ft. Dodge*, 131 Iowa 566, 108 N. W. 1057, 1058.

■ The rights of the owner of the underlying fee are always subordinate to the rights of the public and may grow less as the public needs increase. With this exception such owner retains all that is not needed for public use. Mineral deposits and quarries within the limits of the highway belong to the owner of the fee and he may work the mines or quarry the stone so long as he does not interfere with the public use of the highway or cause the road to subside. He has and may convey to another the right to lay a pipe line under the bed of the road, provided he does not thereby obstruct the road. 39 C. J. S., Highways, § 138a. at 1076; Nichols on Eminent Domain, 3 ed., § 10.212, p. 240; 1 Elliott on Roads and Streets, 4 ed., § 485, p. 549, § 499, p. 562.

However, a change in the highway which tends to make it more useful for public travel and burdens the fee in the manner contemplated when the road was laid out but to a greater degree is not an additional servitude upon the fee. Nichols on Eminent Domain, 3 ed., § 10.1, p. 228. The exercise of an easement already existing as agreed upon or paid for, but which had hitherto lain dormant, is not a new taking of property. *Idem*, § 10.211(2), pp. 235-6.

■ Most but not all of the courts recognize a distinction between a highway in the country and a street in a municipality, with respect to the extent of the servitude in the land upon which the

way is located, the urban servitude being held to be more comprehensive than the rural. 25 Am. Jur., Highways, § 167, p. 462; 1 Elliott on Roads and Streets, 4 ed., § 482, p. 546; *Colegrove Water Co. v. City of Hollywood*, 151 Cal. 425, 90 P. 1053, 1955.

Nichols says that "This seemingly fanciful distinction between urban and rural servitudes does not, however, really rest on a legal difference between the public easement of a highway in the city and in the country, but on a different ground." Nichols on Eminent Domain, 3 ed., § 10.1(1), p. 229. The distinction, when made, seems to rest on the theory that the broader servitudes allowed in a city were not in contemplation when the rural right of way was acquired; but we have been cited to no case, and have found none, which holds that a reasonable lowering of a grade of a rural road in making an improvement which is necessary or convenient for public use in the current methods of travel constitutes an additional servitude for which the owner of the underlying fee is entitled to compensation. It is not contended in this case that the proposed change of grade is either unreasonable or unnecessary, and, as stated, it is to be made wholly within the original right of way and there is here involved no question of damage to abutting owners.

*Yale University* v. *New Haven*, 104 Conn. 610, 134 A. 268, 47 A. L. R. 667, 672, quotes from a former decision of that court as defining the public easement and giving the explanation of why it can never be static, as follows:

"* * 'The best definition of a public easement is often that given by public use. A highway is a way over which the public at large have a free right of passage. It is constructed and maintained in their interest. This liberty of passage may always be exercised in such a manner as may, at the time, be customary and reasonable, having in view both the convenience of the public and the proprietary rights of the owners of the soil. As to what is reasonable under these limitations, every age, speaking by its common law, must of necessity judge by its own standard.' "

*Peabody* v. *City of Boston*, 220 Mass. 376, 107 N. E. 952, 953, involved the use of a city street, but this statement in the opinion is generally applicable:

"* * The public acquired the right to use the land, within the boundaries of the taking of the easement of travel, for all reasonable means of transportation for persons and commodities which the advance of civilization may render suitable for a highway. The fee of the land remains in the landowner, who may use it in any reason-

able way not inconsistent with the paramount right of the public easement which is coextensive with the limits of the highway. * *." See also *Cloverdale Homes* v. *Town of Cloverdale*, 182 Ala. 419, 62 So. 712; *McClintock* v. *Richlands Corp.*, 152 Va. 1, 11, 145 S. E. 425, 432.

In *City of Chadron* v. *State*, 115 Neb. 650, 214 N. W. 297, 299, the city had maintained its water line under a rural road for many years. Some of this line was damaged or destroyed in lowering the grade of the road and the city sought compensation from the State. The court held that it was the duty of the city to change its pipes at its own expense; "that neither the individual owners of adjoining land, as owners of the fee, by conveying an easement, nor Dawes county, by permitting an easement under the county roads, would thus be able to create a right, by 'contract or otherwise,' superior to the right of the public in said road. While such a road bears the additional burden of the water pipes, it must bear it without interference with all of the conventional and implied rights of the public to use the road in the best way to serve the public welfare." It was held, however, that the failure of the State to give the city notice and a reasonable opportunity to lower its pipes was actionable.

In *West* v. *Maryland Gas Transmission Corp.*, 162 Md. 298, 159 A. 758, 766, it was held that the appellee, having obtained from the County Commissioners a permit to disturb the surface and an easement from the owner of the underlying fee to lay its pipes under a road in the open country, was not required to have also a franchise from the Public Service Commission of Maryland, but the court added:

"* * Nothing that we have here said is intended to affect in any manner the right of those in control of the roads under which the appellee's pipe passes to improve, reconstruct, or change the grade of the road, should the same become necessary or convenient for the proper exercise of the easement of way. Should any such changes become necessary or expedient for the purposes stated, the appellee will be under the obligation to replace its pipe so as to conform to such changes."

Long use by the appellee and its predecessors of the space under the road now occupied by its pipe line does not give it a right to keep its line in that position so as to obstruct the reasonable lowering of the grade of the road. However long continued, encroachments on a public road will not confer title by adverse possession or prescriptive right thereto, the right of the public to re-

move such encroachments being superior to the right of the owner to maintain them, there being " 'nothing inconsistent with a public easement for the authorities to allow an abutting land owner the temporary occupation of a public highway not demanded for the present use of the public.' " *Jones* v. *City of Clarksburg*, 84 W. Va. 257, 262, 99 S. E. 484, 486.

■ Appellee argues that § 33-52 of the Code is "a clear recognition" of the fact that an existing grade cannot be changed without compensation to the owner of the underlying fee. We do not so read that statute. It vests the Commissioner with the power of eminent domain for the construction, reconstruction, alteration, maintenance and repair of the secondary system of highways and provides that he may "condemn property in fee simple and rights of way of such width and on such routes and grades and locations" as he may deem requisite. Whether rights of way are acquired in fee simple or only as easements, there is nothing to indicate that the grades that may be shown on a map are to limit the depth or the height to which title is to be taken. The grade line is usually shown for the purpose of fixing damages "resulting to the adjacent or other property of the owner," (Code § 33-60), and of course for the information of those concerned with the construction of the road.

To construe § 33-52 as limiting the depth of the right of way would be to say that a grade shown on a map used in acquiring the right of way firmly fixed the thickness of the right of way so that any deviation therefrom, up or down, either in the original construction or in the subsequent improvement of the road, would require the obtaining of additional depth or height, whether inches or feet, and result in intolerable delay and confusion and open the floodgates of litigation over the rights of the public in roads both old and new.

We hold on the facts here established that the Virginia Department of Highways has the right to change the grade of the road here in question according to its Project No. 1307-10-11, so referred to in the record, which right is superior to the right of the appellee to maintain its pipe line under the bed of the road where it will obstruct the lowering of the grade as proposed by the appellant; and that the said pipe line or lines of the appellee must be relocated, at the expense of the appellee, either within said right of way of otherwise, so as not to obstruct the superior right of the ap-

pellant to make the proposed improvement in the grade of the road.

The order of the trial court rejecting the appellant's prayer for a declaratory judgment of his rights and dismissing his petition is therefore reversed, and an order will be entered here reinstating the appellant's petition, adjudicating his rights to be as herein stated and remanding the cause for further proceedings consistent with this opinion.

*Reversed and remanded.*