# Richmond

## GREENCO CORPORATION v. CITY OF VIRGINIA BEACH.

August 30, 1973.

Record No. 8172.

Present, All the Justices.

*James T. Turner; Lawson Worrell, Jr. (Williams, Worrell, Kelley & Worthington, on brief), for appellant.*

*Joseph J. Lawler (J. Dale Bimson, City Attorney for the City of Virginia Beach; Kellam, Pickrell & Lawler, on brief), for appellee.*

HARRISON, J., delivered the opinion of the court.

Atlantic Boulevard is a strip of property in the City of Virginia Beach bordering the Atlantic Ocean and lying between the ocean and lots on which numerous cottages, homes and business establishments have been constructed.[1] We are concerned here with that portion of Atlantic Boulevard, 125 feet x 52 feet, which adjoins the eastern boundary of Lots 1, 2 and the southern one-half of Lot 3 in Block 74 on a certain subdivision plat entitled "Property of Virginia Beach Development Company" recorded in the clerk's office of the court below on March 16, 1908 in Map Book 3 at page 177. The lots

---

[1] See map recorded with the opinion of this court in *Williams v. Gordan*, 154 Va. 728, 730, 154 S. E. 538, 539 (1930), which reflects Atlantic Boulevard, its location and general direction with reference to the ocean and to lots which front on the west side of Atlantic Boulevard, as do the lots of Greenco Corporation.

are owned by Greenco Corporation, and the southern boundary of Lot 1 is 31st Street.

Greenco sought a declaratory judgment of its right, title and interest in the property in controversy and an injunction to restrain the City from removing certain improvements maintained thereon by appellant. The trial court concluded that Atlantic Boulevard, which it referred to as "Ocean Avenue", from the easternmost boundaries of the oceanfront lots to the edge of the ocean, including the property in question, was dedicated in 1900, by the recordation of a subdivision plat and sale of the lots by reference thereto, as a seashore recreational area for the benefit of the public generally and of the owners of the lots shown on the plat, and that the offer of dedication had been accepted by the use of the property by the public and by acts of the appropriate governing authority. Greenco's prayer for an injunction was denied, and it appealed.

By deed dated July 25, 1900, Alfred N. Chandler and Arthur S. Chandler conveyed to the Virginia Beach Development Company approximately 1,200 acres of land in Princess Anne County fronting on the Atlantic Ocean and referred to it as being indicated generally on a plat marked "Map of Virginia Beach owned by the Norfolk and Virginia Beach Railroad and Improvement Company", which deed and map are recorded in the clerk's office of the lower court. On the 1900 plat the strip is shown as Ocean Avenue. However, it appears that the words "Ocean Avenue" were not written on the plat until some time after 1926. We will refer to the strip as Atlantic Boulevard as it is designated on the 1908 plat.

Neither the 1900 nor the 1908 subdivision plats met the statutory requirements for a dedication of the public ways shown thereon, and their recordation amounted to only a common law offer of dedication which required an acceptance to be complete.

The two maps reflect that Atlantic Boulevard extends many blocks along the ocean north and south of Greenco's lots. The strip meanders with the margin of the ocean, and witnesses refer to it as the strand, the lawn or the grassy area. It is not delineated between straight lines as are the streets and alleys on the plats. On both plats, however, the area is distinctly shown.

Greenco acquired its lots in 1944 from Sea Pines Improvement Company. Its conveyance included riparian and waterfront rights as well as any rights its grantor had in and to the streets and alleys bounding the property. About 1910 Greenco's predecessors in title

built "Seaside Park" on oceanfront lots located between 31st and 33rd Streets. Permanent structures were erected and in them were conducted the usual concessions and attractions found in seashore amusement parks.

Greenco showed the various uses it had made of the lawn area. It also was testified that at one time there was a depressed walkway across the lawn which led from the Seaside Park bathhouse to the ocean; that formerly a pumphouse was located on the lawn area and used incident to the operation of a commercial salt water pool from 1924 until 1937; and that for about 10 years one of its permanent structures extended approximately 20 feet into the lawn area. This building was destroyed by fire in 1955 and was not replaced.

The trial judge viewed the parcel in issue and noted that Greenco's permanent structures appeared to be in line with the buildings of other property owners in both directions along the oceanfront. He found within the 125 x 52-foot parcel claimed by Greenco a few portable bleachers and a 20-foot square stage of plywood construction which "could be readily dismantled". He observed no other structures of any type within the lawn area in front (east) of Greenco's property or in the lawn area in front (east) of the property of others, looking both north and south "as far as could be seen".

The critical issue in this case involves the acceptance by the City of the dedication, not the extent of the use of Atlantic Boulevard by adjoining property owners. Some private use of a public way is not infrequently accorded abutting property owners until the public use requires its surrender. *Sipe* v. *Alley*, 117 Va. 819, 86 S. E. 122 (1915); *Basic City* v. *Bell*, 114 Va. 157, 76 S. E. 336 (1912). There are established principles of law which control our decision. They are well stated by Judge Riely in *Buntin* v. *Danville*, 93 Va. 200, 204-05, 24 S. E. 830, 830-31 (1896) as follows:

" 'The principle of dedication by the act of the owner of land,' said Judge Staples, in *Harris's Case*, 20 Gratt. 833, 'is now almost universally recognized as a part of the common law in this country.' Dedication is an appropriation of land by its owner for the public use. It may be express or implied. It may be implied from long use by the public of the land claimed to have been dedicated. Dedication is not required to be made by a deed or other writing, but may be effectually and validly done by verbal declarations.

The intent is its vital principle, and the dedication may be made in every conceivable way that such intention may be manifested. It must, however, be manifested by some unequivocal act, and is not effectual and binding until accepted. When the intention of the owner to make the dedication has been unequivocally manifested, and there has been acceptance by competent authority, or such long use by the public as to render its reclamation unjust and improper, the dedication is complete. [Citing cases and authorities.]

"And when it is complete, it is irrevocable. No obstruction of the subject of the dedication, or encroachment upon it by the original owner of the soil, or by any one else will affect the dedication, or impair the right of the public to its benefits, unless the land so dedicated has been abandoned by the public, or by the proper authority. [Citing cases and authorities.]" *See also Va. Hot Springs Co.* v. *Lowman*, 126 Va. 424, 101 S. E. 326 (1919); *City of Danville* v. *Anderson*, 189 Va. 662, 53 S. E. 2d 793 (1949); *Anderson* v. *Water Company*, 197 Va. 36, 87 S. E. 2d 756 (1955).

It has been held that a land company, ". . . when it laid off its land into lots, streets and alleys, sold lots with reference thereto, and recorded the map or plat thereby conclusively and perpetually dedicated said streets and alley to the public". *Payne* v. *Godwin*, 147 Va. 1019, 1024, 133 S. E. 481, 482 (1926). *See also* 5 Mich. Jur., *Dedication*, § 12, p. 665, 63 A. L. R. 671, 23 Am. Jur. 2d, *Dedication*, § 25, p. 22.

Greenco concedes that the recordation of the 1908 plat constituted an offer of dedication of Atlantic Boulevard as "a public right-of-way or street" and that in 1927 there was municipal acceptance of the east portion thereof by the construction by the Town of Virginia Beach of a concrete boardwalk. The City maintains, and the trial court held, that its acceptance of the disputed area was not so restricted; that the City has a public easement over the disputed area for right of passage and for all other appropriate public uses; and that any interest of Greenco therein is subservient to the free and unrestricted exercise of such rights by the City.

We will now review the acts of the City and its predecessor governing authorities which in the opinion of the trial court evidenced an acceptance of the offer of dedication of Atlantic Boulevard. On April 16, 1906, the council of the then Town of Virginia Beach

formally adopted certain streets including "Ocean Avenue" [Atlantic Boulevard]. At that time the northern boundary of the Town was located at 26th Street, some 5 blocks south of the area in dispute here.

In June, 1921, the Board of Supervisors of Princess Anne County, prior to the consolidation of the County and the City, authorized the Norfolk Southern Railway Company to erect poles and string wires in and along certain roads and streets in the county, including Atlantic Boulevard from 26th Street to 40th Street. This easement crossed the parcel in controversy.

The concrete boardwalk in front of Greenco's property was constructed in 1927 by the Town of Virginia Beach and extends many blocks to the north and south therefrom. It is located within the area of Atlantic Boulevard and along its eastern side. The strip between the boardwalk and the east line of oceanfront lots constitutes the remaining lawn area on which are found the city utilities.

In 1930 the Town of Virginia Beach contracted with the Virginia Electric and Power Company for municipal light and power. This contract expressly made reference to a July 20, 1927 agreement between the Town and the Norfolk Southern Railway Company by which the Town conveyed to the railway company its street lighting system for "Ocean Boardwalk" between 5th and 35th Streets. The map attached to the 1930 agreement between the Town and Vepco shows lighting fixtures to the east of Greenco's property and in the lawn area in dispute. The testimony established that fixtures were erected within a 10-foot easement west of the boardwalk and in front of Greenco's lots. In 1948 the company replaced the old poles with new and improved ones and erected them on an apron 3 feet from the boardwalk and within the lawn area. Extensive repairs and installations to the lighting fixtures were again made following a severe storm in March, 1962.

In 1946 the Town of Virginia Beach granted a 30-year franchise to the Virginia Beach Gas Corporation to lay, construct and maintain gas pipelines and facilities in the streets, avenues, alleys, lanes and public places within the Town. The company's former president testified that he supervised the installation of underground gas mains seven feet from the property line inside Atlantic Boulevard, and that the mains are still in place.

While the principal use of Atlantic Boulevard is to afford pedestrians a passageway north and south along the beach, and to and from

the beach from intersecting streets and the lots that front on the ocean, Greenco did make other uses of the lawn area of the Boulevard in front of its park. For many years the City made no objection to such uses and the trial court found that the uses made were consistent with the dedication of the area made to and accepted by the City.

The City says the first intimation it had of any claim by Greenco to a part of Atlantic Boulevard is found in a letter to its city attorney, dated June 21, 1960, from the attorney for Greenco and Seaside Park. The letter was prompted by the City's complaint of Greenco's operation of a "basketball game" and its location of an "outdoor platform", both on the lawn. Greenco's letter was written "without prejudice to the rights of any parties" and disclaimed any desire "to litigate the rights of any party in and to Atlantic Boulevard at this time". It stated that Greenco was agreeable to removing from Atlantic Boulevard the "basketball game", but expressed the hope that it could "continue to use the area as in the past by special permission of the City authorities". The letter recognized that the installations were of a temporary nature used only during the summer season to provide free entertainment.

In the March, 1962 storm the stage located on the lawn area of Atlantic Boulevard was destroyed. Seaside Park sought permission from the City to rebuild the stage as a temporary structure removable at the will of the city council. The stage was again to be used for free entertainment. The council permitted the construction of a temporary stage for free entertainment only, the permit to be revocable at the will of the city council, and with the understanding that upon revocation Seaside Park would remove the stage and restore the property. The minutes of the council refer to the property lying east of Seaside Park as "city property".

On September 12, 1966, the city council revoked its permit to Seaside Park and directed the city manager to forthwith obtain the removal of the stage in accordance with the terms of the original permit. Litigation leading to this appeal then ensued between the City and Greenco.

We are concerned with four tiers of property: (1) Oceanfront lots, (2) the grassy strand, strip or lawn, a part of Atlantic Boulevard, (3) the concrete boardwalk, a part of Atlantic Boulevard and (4) the beach. The 1900 subdivision plat shows the entire area between the oceanfront lots and the beach as growing in grass. As early as 1900 a portion of the grassy strip was used as an unpaved public

pedestrian walkway. The present concrete boardwalk has existed since 1927. It is a salient fact here that for over 70 years Atlantic Boulevard has been used by the City and the general public in the way and manner the developers of Virginia Beach intended it to be used. It has provided the owners of lots in the subdivision and visitors to the beach with pleasure and relaxation and with easy and ready access to, from, and along the ocean. It has served the subdivision, the City and the public for whose benefit it was dedicated.

The trial court concluded that it was the intent of the developers ". . . to dedicate this unique strip bordering the Atlantic Ocean not simply as a street in its usual sense, but as a public right-of-way to be used as a beach, a place to experience all of the grandeurs of the sea, an area for relaxation and recreation,—in short, a seaside recreation area to attract and be enjoyed by the public". And it described the area in controversy "as the economic lifeline of the resort community of the City of Virginia Beach". In determining whether there has been a dedication and acceptance it is proper that the court consider the intent, purpose, importance and benefit of the dedication to the public, as well as other factors. 23 Am. Jur. 2d, *Dedication*, § 74, p. 62, § 76, p. 63.

In essence, Greenco contends that the offer of dedication by the developers of Virginia Beach was of an avenue or boulevard and not of the entire grassy strand. It says that the City accepted only that portion used as an unpaved pedestrian thoroughfare from 1900 to 1927, and since 1927 represented by a concrete boardwalk. We disagree. In 1906 the Town of Virginia Beach accepted all of Ocean Avenue [Atlantic Boulevard] which it could accept and which was located within the then town limits. At that time property north of 26th Street was in Princess Anne County. Thereafter the Town and County, and subsequently the City, dealt with Atlantic Boulevard as it would any other public property or street. It policed it, built a boardwalk and a seawall, and installed or franchised utilities that one normally finds on public properties. When the dispute arose between Greenco and the City in 1960 the City asserted its dominion over the area in positive and unequivocal terms.

In *Va. Hot Springs Co.* v. *Lowman, supra,* the question involved was the extent of a dedication and acceptance of a right-of-way for a turnpike. An injunction was sought by an adjoining property owner against Virginia Hot Springs Company to prohibit the company from grading a bridle path by the side of the driveway of its turnpike

for use of pedestrians and horseback riders. In its opinion the court said:

"This use of the land within the enclosures and especially the location of the fences on each side of the pike in controversy raises a very strong presumption, in the absence of evidence to the contrary, that the adjacent land owners intended to dedicate so much of the land between those enclosures as was reasonably necessary for the convenient and safe operation of the pike. It was apparently set apart for that purpose, and to be used from time to time as the exigencies of the public travel might require. *It was not necessary that the whole of it should have been put to that use when the pike was first constructed.* Travel was then comparatively light, and its use was not then needed. *But the acceptance of the whole dedication was sufficiently evidenced by the construction of the pike on a part thereof, and the subsequent use made of other parts.* . . .

\* \* \* \* \*

"Some nice distinctions have been drawn by the courts about acceptance of an implied dedication by long continued use of the right by the public, but that the acceptance may be so made seems to be sustained by the weight of prevailing current opinion. . . . The effect of this acceptance is to create an irrevocable dedication as between the owner and his alienees and the public. . . . But the acceptance need not follow the offer of dedication at once. It is sufficient if made within a reasonable time and before the withdrawal of the offer. . . . Where the acts of dedication show a continuing offer of dedication, it is not necessary that the acceptance should be evidenced by an immediate use and occupation of the whole of the land dedicated, *but if a part of it is so used and occupied, with no indication of an intention to refuse or to abandon the residue, the use and occupation of such residue may be postponed until the public necessity or convenience requires its use.* . . ." (Italics supplied.) 126 Va. at 433, 434-35, 101 S. E. at 329-30.

The evidence supports the finding by the trial judge that the offer of dedication by the developer of Virginia Beach of the grassy area constituting Atlantic Boulevard, including the property to the east of Greenco's lots, was accepted. Its use by the public as a passageway from 1900 to date, the construction by the City of the boardwalk on the eastern part thereof, and other actions by the City and its gov-

ernmental predecessors, were all acts evidencing an acceptance. It was not necessary that the City's acceptance be evidenced by an immediate use and occupation of the whole strip or area. It could use and occupy a part and postpone its use and occupancy of the residue until public necessity or convenience required its use.

During the early life of the City the beach area was probably well served by an unpaved passageway along Atlantic Boulevard. The growth and popularity of the resort created a need for a wider and more convenient concrete passageway. The safety of property owners and visitors necessitated the installation of lights along the boardwalk. Growth also accounted for the installation of gas mains. Future growth may require a still wider boardwalk, or even an entirely different approach and use of Atlantic Boulevard to serve the public and the best interests of the beach.

Counsel for Greenco relies strongly upon *May* v. *Whitlow*, 201 Va. 533, 111 S. E. 2d 804 (1960). There plats were recorded in 1909 and 1910 sufficient to constitute the offer of a common law dedication of a 60-foot right-of-way for a highway. However, the evidence established that until 1957 the county and state accepted and maintained only a clearly defined 30-foot right-of-way. For a period of nearly 50 years the property owners along the highway were allowed to assert claims to all the area outside the 30-foot width and to make uses thereof completely foreign to the dedication, such as erecting fences, planting hedges, trees and ornamental shrubbery. The trial court held as a fact that there had been no acceptance by public authorities of the area in question, and we affirmed. In contrast, the trial court in the instant case finds as a fact that there has been long public use and an acceptance by public authorities, of the controverted land, and further that there has been no encroachment on Atlantic Boulevard by oceanfront property owners, or any uses made of the area inconsistent with the uses the developer intended be made by the public.

We have carefully considered all errors assigned by the appellant and find no grounds for a reversal. The judgment of the trial court is supported by the evidence, and it is

*Affirmed.*