**FALA CORPORATION and Kana Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

and

**The City of Virginia Beach, Defendant–Intervenor.**

No. 98–337L.

United States Court of Federal Claims.

May 28, 2002.

***Order Resolving Motion to Amend the Complaint***

MARGOLIS, Senior Judge.

This takings action is before the Court on plaintiffs' motion to amend the complaint filed October 16, 2001. After carefully considering the parties' written submissions and after oral argument, the Court denies plaintiffs' motion.

*FACTS*

On April 14, 1998, plaintiffs brought suit claiming that they own, or owned, four parcels of beachfront property ("the property"), which lies between certain platted lots on the west and the Atlantic Ocean on the east, and on which the United States government ("defendant") erected a seawall and dumped dredged spoils. Plaintiffs claim that the defendant's actions amount to a taking of their property under the Fifth Amendment and are suing for just compensation in the amount of $3,740,000. Defendant denies that plaintiffs own or owned this property and therefore asserts that plaintiffs do not have a claim.

In January 1995, Nala Corporation ("Nala"), wholly owned by Edwin B. Lindsley ("Lindsley"), a self-described land salvor, requested that the Norfolk Circuit Court appoint a receiver for the defunct Virginia Beach Holding Corporation ("VBHC") to remove a cloud on Nala's alleged title to the property. *City of Virginia Beach v. Nala Corp.,* 53 Va. Cir. 309, 316, 2000 WL 33340689 (Norfolk Cir.2000). Pursuant to an *ex parte* hearing, Norfolk Circuit Court

Judge Charles E. Poston issued an order directing the court-appointed receiver to execute a deed to Nala for the property purportedly owned by VBHC. *Id.* at 317. On December 28, 1995, Nala conveyed that property to Fala Corporation ("Fala"), and Fala conveyed the property to Kana Corporation ("Kana") on February 19, 1997. *Id.* Fala and Kana, the plaintiffs in this action, are both Virginia corporations wholly owned by Lindsley.

One and one-half years after the receiver's deed was conveyed, defendant, United States, acting through the Department of the Army, and the City of Virginia Beach, Virginia, entered into the Project Cooperation Agreement for implementation of the Beach Erosion Control and Hurricane Protection Project at the City of Virginia Beach, Virginia. Under the agreement, the United States Army Corps of Engineers ("Corps") was obligated to construct a seawall and other structures along several miles of the Virginia Beach oceanfront. In October 1996, the Corps began construction of the seawall on property allegedly owned by Fala. The Corps continued construction of the seawall on the property until May 1997, when Kana allegedly owned the property. Around the same time, the Corps also placed on the property dredged spoils and other beach fill material.

On April 14, 1998, plaintiffs filed a takings suit in this Court based on the seawall construction and spoils deposits. The City of Virginia Beach ("defendant-intervenor") intervened on the defendant's behalf. On March 12, 1999, defendant-intervenor filed a Bill of Complaint in the Norfolk Circuit Court against Nala, Fala, Kana, and Lindsley to have the order appointing a receiver for VBHC vacated and the receiver's deed declared null and void. *Id.* at 318. While the Norfolk Circuit Court tried the case, this Court stayed its own proceedings.

On September 29, 2000, Norfolk Circuit Court Judge Poston issued a lengthy letter opinion that was later incorporated in his January 30, 2001 Final Order. *Id.* Judge Poston vacated the original order and declared the deed null and void finding that plaintiffs intentionally and knowingly perpe-

trated a fraud on the court. *Id.* at 338. This order nullified the basis for plaintiffs' property ownership claim in this case, as discussed in this Court's order granting summary judgment for defendant and judgment on the pleadings for defendant-intervenor, filed this day.

## DISCUSSION

### 1. *Prior Deadline to Amend Complaint*

On October 16, 2001, plaintiffs moved to amend their complaint. By an August 10, 1999 order, this Court stated, "All amendments to the complaint must be made not later than September 1, 1999." Thus, plaintiffs' motion to amend, made over two years after the court-ordered deadline for amending the complaint expired, clearly contravenes the order.

Rule 15(a) of the United States Court of Federal Claims ("RCFC") states that a party may amend its own pleadings as a matter of course in either of two instances: (1) before the response is served, or (2) within twenty days after the response is served if the response is one to which no further pleading is permitted and a trial has not yet been scheduled. RCFC 15(a). Otherwise, a party may amend its pleadings only by written consent of the adverse party or by leave of court. *Id.* The motion to amend was made well outside the RCFC 15(a) time constraints. The adverse parties, here defendant and defendant-intervenor, have not consented and oppose plaintiffs' motion. Thus, the only way plaintiffs may amend the complaint is by leave of this Court.

According to RCFC 15(a), "leave [to amend the complaint] shall be freely given when justice so requires." This Court freely gave leave to amend the complaint when it issued the August 10, 1999 order. The complaint was filed April 14, 1998, and the answer was filed July 21, 1998. Plaintiffs did not try to amend the complaint either before the answer was served, nor within 20 days thereafter. The August 10, 1999 order was issued well beyond the time within which plaintiffs could have amended the complaint as a matter of course. Yet, this Court gave

plaintiffs leave to amend, setting September 1, 1999, as the deadline.

Plaintiffs were well aware, as evidenced on a number of occasions, of the amendment deadline. First, the Court did not arbitrarily choose the date; indeed, the plaintiffs proposed the deadline. Plaintiffs recommended the September 1, 1999 date in their proposed scheduling order that they submitted to the Court in July 1999. Second, in plaintiffs' August 23, 1999 opposition to defendant-intervenor's motion to stay the proceeding, plaintiffs specifically stated that "other claims of ownership ... will be set forth ... in accordance with this Court's discovery order and schedule requiring that all amendments be made no later than September 1, 1999 ...." Plaintiffs' Opposition to Motion to Stay at 3.

Additionally, plaintiffs claim that they had an alternate source of ownership as early as 1996. According to plaintiffs' motion to amend the complaint, one year after being granted the receiver's deed, Nala obtained ownership of all outstanding stock in the defunct VBHC, which Nala subsequently conveyed to Kana. Thus, plaintiffs were clearly in a position to amend the complaint well before the deadline to amend expired. Yet despite alleged procurement of this additional indicia of ownership, plaintiffs failed to provide the defendant, the defendant-intervenor, and this Court with that information until after their own deadline to amend had long passed.

While RCFC 15(a) states that leave to amend shall be freely given, it is not to be abused. This Court satisfied the requirements of justice when it extended the deadline for amending the complaint to September 1, 1999. Allowing amendment of the complaint at this time, especially in light of the length of time that plaintiffs possessed the information with which they wish to amend, would permit plaintiffs to abuse the established Court timeline.

### 2. *Proffered Amendment*

Were the Court to grant plaintiffs' motion to amend the complaint, despite the expired amendment deadline, plaintiffs' proffered amendment would have no effect on the dispute at hand. Neither plaintiffs' originally claimed ownership basis, nor their recently tendered claim are valid bases for ownership of the property.

In order to state a Fifth Amendment takings claim, a claimant must show a legally-cognizable property interest. *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed.Cir.1993); *Applegate v. United States*, 35 Fed.Cl. 406, 413 (1996). Originally, Nala Corporation claimed that its legally-cognizable property interest was through ownership of the property pursuant to a deed originating from the court-appointed receiver for Soames Corporation. *Nala Corp.*, 53 Va. Cir. at 311–316. Nala alleged that property owned by VBHC constituted a cloud on the property title that originated from the Soames receiver. *Id.* at 316. As such, Nala requested that the Norfolk Circuit Court appoint a receiver for VBHC and issue to Nala a receiver's deed that cleared the property title, which the court did. *Id.* Because Judge Poston subsequently revoked the VBHC receiver's deed, plaintiffs want to amend their complaint to allege a different source of ownership. Plaintiffs still claim that VBHC is their predecessor in title to the property, but they seek to revise the complaint to assert that their property ownership now stems from Nala's former and Kana's current possession of all outstanding VBHC stock.

However, plaintiffs' claims of VBHC stock ownership are moot, and amendment of the complaint to include that claim would be of no moment. Judge Poston's findings were not limited to the validity of the receiver's deed, but included findings regarding VBHC's ownership of beachfront property that affect plaintiffs' revised ownership claim. This Court gives full faith and credit under 28 U.S.C. § 1738 to those findings.

In determining what constitutes a legally-cognizable property interest, courts often look to state or local law. *United States ex rel. Tennessee Valley Authority v. Powelson*, 319 U.S. 266, 279, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); *Avenal v. United States*, 33 Fed.Cl. 778, 784–85 (1995). Judge Poston's findings provide this Court with clear guidance on property ownership under Virginia

state law and Virginia Beach local law. Basing his holding on an extensive analysis of cases, statutes, title examinations, and history of the Virginia Beach oceanfront, including the Virginia Supreme Court's decision in *Greenco Corp. v. City of Virginia Beach*, 214 Va. 201, 198 S.E.2d 496 (1973), Judge Poston declared in his opinion: (1) "Soames thus could not, and did not, at any time, own oceanfront property south of 5th Street," (2) "[VBHC] never owned any land east of its platted lots ...," and (3) "*Greenco* negated Nala's claim to any oceanfront land south of 5th Street." *Nala Corp.*, 53 Va.Cir. at 324, 327, 332–33. Judge Poston's findings left no room for a determination that plaintiffs own or have an interest in any of the oceanfront property south of 5th Street.

Based on Judge Poston's finding, plaintiffs' proffered claim that they own or owned the property that lies east of the platted lots through VBHC stock ownership fails, and thus does not support their assertion of a legally-cognizable property interest.[1] As a result, plaintiffs' proposed amendment would have no bearing on the outcome of this case.

## CONCLUSION

For the reasons set forth, plaintiffs' motion to amend the complaint is denied.

---

1. Pursuant to the Norfolk Circuit Findings and this Court's application of those findings through the full faith and credit statute and collateral estoppel, none of plaintiffs' claims of ownership of the property, including their assertions of ownership through Soames Corporation, Virginia Beach Development Corporation, and Virginia Beach Holding Corporation, are valid.