57 S.E.2d 904 (1950)
BURTON
v.
CHESAPEAKE BOX & LUMBER CORPORATION et al.
Supreme Court of Appeals of Virginia.
March 13, 1950.
*905 James G. Martin & Son, Norfolk, for plaintiff in error.
Savage & Lawrence, T. L. Sawyer, Norfolk, for defendants in error.
Before GREGORY, EGGLESTON, SPRATLEY, BUCHANAN, STAPLES, and MILLER, JJ.
SPRATLEY, Justice.
This case presents for our consideration the proper construction of the terms of a lease of land. The facts are without substantial conflict, and the decision depends solely upon questions of law.
On September 15, 1943, George H. Burton, by written lease, demised unto C. L. Burroughs and R. T. Blanchard, trading as Blanchard Box & Crate Company, his building and certain furniture and fixtures therein, located on Wilson Road in South Norfolk, Virginia, for one year, beginning October 1, 1943. The lease provided that in the absence of a written notice from one of the parties of a desire to terminate it, given sixty days prior to the end of a rental year, the lease would continue from year to year.
The lease contained the following covenants and agreements:
"The parties of the second part agree to pay as rental for the above mentioned property and equipment, the sum of $112.50 per month, payable on the first day of each and every month, in advance, to the party of the first part, or to his duly appointed representative, $112.50 is to be paid upon signing of this lease, receipt of which is hereby acknowledged, and said sum is to cover the rent for the month of October, 1943.
"It is further agreed by the parties hereto, that in event that the parties of the second part shall be in default ten days in their rent, as above set forth, that the party of the first part shall at his option have the right to forthwith re-enter upon the said property and declare this lease null and void, and take possession of said property as for breach of contract, either with or without process of law.
"It is further agreed that the parties of the second part shall have issued at their expense, and maintain during the tenure of this lease a fire insurance policy in amount of $5,000.00 to indemnify the party of the first part against any and all loss sustained by fire during the tenure of lease, $4,500.00 of which shall be to cover loss on the building, and $500.00 on the office furniture and fixtures, and in event of loss, this amount shall be paid to the party of the first part.
"It is further agreed, that the parties of the second part shall have the right to alter, change, build and or repair the building and fences, that they will maintain and keep the premises in the same good condition that it was in upon their entry into, and that in the event of their terminating this lease, they will leave the premises in the same good condition that it was in when this lease was signed, that the foundation walls, and roof shall in no way be weakened or damaged."
By agreement dated April 6, 1944, Burroughs and Blanchard, in consideration of $250 cash, contracted to sell and convey to Forest Land and Development Corporation its rights in the above lease, together with certain office furniture and fixtures, for the sum of $2,018.50. The fourth paragraph of that contract reads as follows:
"All of the right, title and interest of Vendors in and to a certain lease from George H. Burton, demising the above *906 premises to them for a term of one year from October 1, 1943, at a monthly rental of One Hundred Twelve Dollars and Fifty Cents ($112.50) plus an amount equal to the premiums on the fire insurance on said property, which said lease is to be properly assigned to Vendee, and Vendors agree that they will pay all rental accruing thereunder prior to May 1, 1944."
On April 24, 1944, Burroughs and Blanchard, in consideration of the sum of $2,018.50, executed a deed to the Forest Land and Development Corporation for the rights and property described in its contract above. The deed described the rights in the lease thereby assigned as follows:
"All of the right, title and interest of Vendors in, to and under that certain lease from Geo. H. Burton, as lessor, to Vendors, as lessees, bearing date on the 15th day of September, 1943, demising to Vendors for a term of one year, beginning on the 1st day of October, 1943, and ending on the 30th day of September, 1944, the premises above referred to, situated at Wilson Road and the Norfolk Southern Railroad right of way, in the City of South Norfolk, Virginia, together with certain office furniture, fixtures and equipment described in the said lease, a copy of which said lease is hereto attached and hereby expressly made a part hereof."
Neither the contract nor the deed was signed by either of the defendants. The lease was not attached to the deed, and other than the recital therein there was no evidence that it had been actually attached thereto. In neither instrument did the Forest Land and Development Corporation assume the obligations of the lease.
Forest Land and Development Corporation took possession of the property and conducted business under its own name and sometimes as Chesapeake Box and Lumber Company. It was recognized by plaintiff as his tenant, and as such paid plaintiff a monthly rental of $112.50 up to September 30, 1947, the date of the termination of the lease. However, while in possession of Forest Land and Development Corporation, the demised building and some of its chattels were seriously damaged by a fire on May 2, 1945. There was then no fire insurance on the property.
Chesapeake Box and Lumber Corporation, one of the defendants, as distinguished from Chesapeake Box and Lumber Company, was not chartered until 1946, and consequently it was not in possession of the premises at the time of the fire.
Burton instituted this action in assumpsit against the Chesapeake Box and Lumber Corporation and Forest Land and Development Corporation on March 23, 1948, to recover damages in the sum of $5,000 for loss occasioned by the fire. He alleged that his loss was caused by the failure of the defendants to procure fire insurance as agreed and to return the leased premises at the termination of the lease in the same condition they were in upon their entry thereon.
A jury was waived and all matters of law and fact were submitted to the court. The court, upon consideration of the law and the evidence, dismissed the action as to the Chesapeake Box and Lumber Corporation. To this ruling there is no assignment of error.
The court being further of opinion that the Forest Land and Development Corporation did not assume the obligation of the lease and that the covenant to insure the premises was a mere personal covenant of the original lessees, and not a covenant running with the land, held that the Forest Land and Development Corporation was not liable for the damage, and entered judgment accordingly.
The sole assignment of error is that the judgment of the court is contrary to the law and the evidence and plainly wrong. Four grounds are asserted in support of this assignment. The first ground is that the agreement in the lease to insure the property was a covenant running with the land. The second and third grounds are that the covenants to maintain and keep the premises in good condition, and to leave them in the same condition that they were in when the lease was signed, imposed upon the defendants the duty to repair the fire damage. Under the fourth ground, it is claimed that Forest Land and Development *907 Corporation having accepted an assignment of the lease, the plaintiff had the right under Virginia Code 1942, (Michie), section 5143, Code of Virginia, 1950, section 55-22, to hold it liable in the event of failure of the performance of its provisions.
In addition to the facts which we have hertofore stated, the following evidence was presented to the court:
Julius Heller, president of the corporation, testified that prior to the fire, he had not seen the lease referred to in the deed to his corporation. He said that the recital in the contract, the "monthly rental of $112.50 plus an amount equal to the premiums on the fire insurance on said property," was the only intimation he had about any insurance, and he was not informed until long after the fire had occurred that the original lease contained a covenant requiring the lessees to furnish an insurance policy. He declared that his corporation had not agreed, at any time, to insure the property against loss by fire. There is no evidence in the record that it assumed any of the covenants of the lease.
On July 30, 1945, Burroughs and Blanchard wrote Burton that they had sold their business, with their rights to the lease on his property, to Forest Land and Development Corporation as of May 1, 1944, and that they were therewith "concluding any obligation of this lease at the expiration of its present term." That term expired on September 30, 1945.
Upon receipt of this notice, Burton prepared and submitted to the defendant a new lease to become effective on October 1, 1945. The defendant refused to enter into this lease because it contained a provision which would have required it to restore the premises to the condition they were in prior to the fire. Heller thought the new proposal was an unfair scheme or trick to impose a liability on his company which did not exist under its former status.
Burton said that when he received the notice of July 30, 1945, from Blanchard and Burroughs, he did not construe it as a notice for the termination of the lease, but merely regarded it as notice that the lease had been transferred to the defendant. He did not, however, explain why he attempted to make a new lease with the defendant if he thought the original lease was in effect.
On April 21, 1947, Burton wrote the defendant calling its attention to the bad state of repair of the building and premises, and requested it to place the building in repair. On June 29th, 1947, he furnished counsel for defendant with an estimate of the cost of repairing the fire damage. On July 22, 1947, he gave written notice of his desire to terminate the lease on the last day of September, 1947. On September 30th, 1947, he demanded that the defendant take immediate action to repair the building, referring to former letters calling the attention of the defendant "to the damaged condition of the building, said damage being caused by fire and negligence and not as ordinary wear and tear." This letter contained the following paragraph:
"The terms of your lease specifically specifies the condition under which your lease shall be terminated it also specifies that you must carry $5,000.00, (Five Thousand Dollars) fire insurance on the building to indemnify the owner against any and all fire damage to same during your occupancy, the fire damage to this Building is self evident and it has not been repaired."
These letters show that although the fire occurred on May 2, 1945, Burton made no demand for the damage to his property until April 21, 1947, nearly two years after the fire. It further disclosed that no reference was made to the requirement that the lessee carry $5,000 fire insurance until September 30, 1947, more than two years after the fire.
Burton stated that neither the defendant nor the original lessee had furnished him with an insurance policy. He made no demand prior to the fire that they insure the property for his protection. The evidence does not disclose whether the original lessees insured the property or what the insurance would have cost. We do not know whether Burton released Burroughs and Blanchard from their liability as lessees at date of receipt of notice that they had assigned the lease or at some other time.
*908 The record is signally free from any evidence indicating that, either prior to the fire or immediately thereafter, the plaintiff considered the defendant under an obligation to obtain fire insurance. All of his actions indicate the contrary. It is difficult to understand why he made no inquiry or demand concerning fire insurance, before or immediately after the fire, on Blanchard and Burroughs, his lessees, or the defendant; or why he waited until April, 1947, to request defendant to put building in repair and until September 30, 1947, the date of the termination of the lease, to demand damages because of failure to insure. During the whole period of defendant's tenancy, it paid a rental of $112.50 per month without reduction for fire damage. Obviously, if the fire damage was as great as plaintiff represented it to be, lessor was not entitled to full rent and also to the benefit of insurance proceeds. This, coupled with the delayed demand for fire damage on account of failure to procure insurance, was not such as might have been normally expected in view of the contentions later made by plaintiff.
After the fire, the defendant insured the building in its name. It did not deliver the policy of insurance to the plaintiff. This fact does not aid us in determining whether or not the covenant to insure in the lease ran with the land.
A considerable portion of the evidence was devoted to the question of the amount of damages. In view of the judgment of the court, there is no necessity for its consideration by us.
The language of the contract "a monthly rental of One Hundred Twelve Dollars and Fifty Cents ($112.50) plus an amount equal to the premiums on the fire insurance on said property," was merely a description of the amount of the rental due from lessees. The covenants for rent and for insurance are separate and independent of each other. If the insurance premium constituted a part of the rent payable by defendant, it was liable only for its failure to pay the amount of the premium, a sum which has not been disclosed. An obligation to pay rent did not make the defendant liable for the fire damage.
The first question of law is whether the covenant to insure ran with the land. The development of the law with respect to such covenants is most interesting. In Minor on Real Property, II Edition, Ribble, Vol. I, page 541, it is said:
"Covenants contained in a lease or conveyance of land are said to run with the land when they are of such character that the benefits and burdens thereof pass with the land to the assignee, into whosesoever hands the land may come." 2 Minor's Institutes, 775.
The authorities make a clear distinction between a bare covenant to insure and a covenant to insure coupled with a covenant to rebuild. In a bare covenant to insure without a reciprocal obligation from the lessor to restore the premises in the event of fire, the assignee receives no benefit from the covenant, unless the proceeds of insurance are used to restore the property, and he is thereby enabled to enjoy its occupancy. On the other hand, if the covenant is so related to the land that the performance thereof would be of benefit to an assignee in his occupancy of the land, it is said to run with the land.
In I Taylor's Landlord & Tenant, sec. 400, the distinction is stated as follows:
"The bare covenant to insure is personal, extending only to the covenantor and his personal representatives, without binding the assignee of the term, and, in general, gives the landlord no right to receive the insurance-money; but when it contains a clause for reinstating the premises with the insurance-money, he may not only require it to be so applied, but it becomes a covenant, running with the land and enabling the assignee of the reversion to maintain an action for its breach."
In Sutherland on Damages, 4th Ed., page 3175, we find:
"The bare covenant to insure is personal, extending only to the covenantor. * * * but when it contains a clause for reinstating the premises with such money, he may not only require it to be so applied but it becomes also a covenant running with the land."
*909 In Masury v. Southworth, 9 Ohio St. 340, 341, 348, this is said:
"* * * from the earliest times, the distinction between such covenants as may run with the land, and such as are collateral and cannot, has been taken and maintained. It has been a matter of some dispute, whether a covenant to insure might run with the land. A covenant to run with the land, must have for its subject matter something which sustains the estate and the enjoyment of it, and is therefore beneficial both to lessor and lessee. A covenant to insure, which had for its object the benefit of the lessor only, as where the money paid in the event of a loss would go to him, has been regarded as collateral; but if the money is to be applied to repair or rebuild, then it is in its character like a covenant to repair, which may run with the land." (Italics added.)
See also Thomas v. vonKapff, Md., 6 Gill & J. 372; Voight et al. v. Southern Ohio Savings Bank & Trust Co., 63 Ohio App. 56, 25 N.E.2d 304; Northern Trust Co. v. Snyder, 7 Cir., 76 F. 34.
It will be noted that the lease under review contained no provision requiring the lessor to restore the premises in event of fire. It required the original lessee to insure the property merely to indemnify the lessor against loss. If the property had been insured and its proceeds paid to the lessor, there was no obligation upon him to rebuild so that the assignee could retain its occupany.
It is true that some textbook writers have made the general statement that a covenant to insure runs with the land, but an examination of the cases relied upon by them shows that they principally involve instances where it was assumed that the proceeds of the insurance were required to be used to restore the damage. We have been cited no case to the contrary.
The next question is whether the covenant to maintain, keep, and leave the premises in good repair imposed a liability upon the assignee for the fire damage. It is expressly provided in Virginia Code 1942, (Michie), section 5180, Code of Virginia, 1950, section 55-226, that such covenant shall not have the effect of obligating a tenant to repair fire damage "unless there be other words showing it to be the intent of the parties that he should be so bound."
The covenant to repair relates to the right of the lessees to make alterations and changes in the leased property, and to their duty to make needed repairs because of alterations, wear, tear and usage. It contains no language showing the intent of the parties that the tenant should be personally bound for fire damage. It is separate from and independent of the covenant to insure, which, as we have seen, is a bare, personal covenant extending only to the covenantors, the lessees, Blanchard and Burroughs.
Virginia Code 1942, (Michie), section 5143, Code of Virginia, 1950, section 55-22, has no application unless the party sought to be held liable has assumed an obligation for the benefit of a third party. The statute does not purport to create a contract when no contract exists. Here, as to the premises, the defendant took only what the lessees sold and assigned to it, that is, "All of the right, title and interest of the vendors in and to a certain lease from George H. Burton." The right, title and interest of the vendors included only those covenants which ran with the land. Defendant did not, in consideration of the assignment, agree to assume liability for the performance of any personal covenant of the lessees. The possession of the premises passed to them subject to the right of Burton to enforce against the lessees, Blanchard and Burroughs, the performance of their agreement with him.
The situation is analogous to the conveyance of real property, subject to a deed of trust or other lien, where the grantee does not incur personal liability for the payment of a lien unless he agrees to assume such payment. Swain v. Virginia Bank & Trust Co., 151 Va. 655, 144 S.E. 645; Holcomb v. Webley, 185 Va. 150, 375 S.E.2d 857.
We find no error in the judgment complained of, and it will be accordingly affirmed.
Affirmed.