## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

First and Merchants National Bank,
trustee for Mary Saunders Ruffin under
the will of E. A. Saunders, Jr., deceased

v.

Featherston Service Stations, Inc.,
Julian W. Harman, individually, and
t/a Harman Motor Co.,
and Earl J. Bragg

March 28, 1967

By JUDGE ROBERT LEWIS YOUNG

This is a most unusual case. I have found no case like it in the Virginia reports. It is an action in tort by a fire insurance company against a tenant for years, its sub-tenant, and the latter's servant, seeking reimbursement of monies paid to the landlord to settle a fire loss claim. Our first inquiry is, I suppose, whether the landlord had any claim against these defendants to which the plaintiff may be subrogated. 46 C.J.S., *Insurance*, Sec. 1211, pp. 176-180; 29A Am. Jur., *Insurance*, Sec. 1720, pp. 799, 801.

In *Winfree* v. *Jones*, 104 Va. 39 (1905), it was apparently assumed that a tenant could be held liable for damages caused by a fire due to his negligence, actually the act of a stranger, but the point was not discussed. In *Brough* v. *Higgins, et al.*, 43 Va. (2 Gratt.) 408, 412 (1846), a controversy not directly in point here, it was said as follows:

> By the strict common law rule, supposing there had been no insurance, the tenant is bound to repair, and as the statute of Anne

has not been incorporated in our code, the tenant may be bound to repair the partial injuries from fire, at least so far as to prevent future dilapidations, to which such injury may expose the building. Under this aspect of the case, which devolves on the tenant the duty to make such repairs, the injuries to be repaired are exclusively his risks; and it seems to be a plain consequence of reason and justice, that the indemnity stipulated for such injuries, should enure to him who is bound to repair them. He who suffers the loss should have the indemnity, the claim to which arises solely from the loss.

In *Taylor's Landlord and Tenant*, 9th ed., vol. 1, sec. 196, pp. 255, 256, a most authoritative work, but which might be in error on this point, it is said as follows:

A tenant is answerable to his lessor, if a building on the demised premises is destroyed by fire through his carelessness or negligence; and is bound to rebuild, at his own expense, within a reasonable time.

In 4 Virginia Law Review 546 there is a most scholarly article entitled "Destruction of Buildings by Fire as Waste." While the author concludes that probably fire damages caused by a tenant's negligence would be regarded as actionable waste (at p. 557), he states as follows (at p. 555); "In Virginia, the law touching this matter is not settled."

It would seem logical, under these circumstances, to examine the law in England before our separation from the mother country. By far, to me, the best statement is to be found in Hargrave's Notes on Lord Coke's *First Institute or Commentary upon Littleton*, published in London in 1744, note 377 to 57a, from which I quote:

(1) Action on the case doth not lie for permissive waste. 5. Rep. 13.b. Hal. MSS. -- The case cited by lord Hale is that of the

countess of Salop, who brought action on the case against her tenant at will for negligently keeping his fire, that the house was burnt; and the whole court held, that neither action on the case nor any other action lay; because at common law and before the statute of Gloucester action did not lie for waste against tenant for life or years, or any other tenant coming in by agreement of parties, and tenant at will is not within the statute. But the doctrine that no action lies should be understood with some limitation; for if tenant at will stipulates with his lessor to be responsible for fire by negligence or for other permissive waste, without doubt an action will lie on such express agreement. The same observation holds with respect to tenants for life or years before the statute of Gloucester; for though the law did not make them liable to any action for waste, yet it did not restrain them from making themselves liable by agreement. It may be of use here to add something on the progress of the law as to the accidental burning of houses, so far as regards landlord and tenant. At the common law lessees were not answerable to landlords for accidental or negligent burning; for as to fires by accident, it is expressed in Fleta, that *fortuna ignis vel hujusmodi eventus inopinati omnes tenentes excusant*; and lady Shrewsbury's case is a direct authority to prove, that tenants are equally excusable for fires by negligence. See Fleta, lib. 1, cap. 12. Then came the statute of Gloucester, which, by making tenants for life and years liable to waste without any exception, consequently rendered them answerable for destruction by fire. Thus stood the law in lord Coke's time; but now by the 6. Ann. ch. 31. the ancient law is restored, and the distinction introduced by the statute of Gloucester between tenants at will and other lessees is taken away; for the statute of Ann exempts all persons from actions for accidental fire in any house, except

in the case of special agreements between landlord and tenant.

It has been noted that the text in Blackstone's *Commentaries*, vol. II, p. 281, may not be strictly accurate. *Dorr* v. *Harkness*, 49 N.J. Law 571. Be that as it may, probably no law book was better known here in the early days of this Commonwealth. Blackstone, at the portion of the text cited stated, in part, as follows:

> Waste is either *voluntary*, which is a crime of commission, as by pulling down a house; or it is *permissive*, which is a matter of omission only, as by suffering it to fall for want of necessary reparations. . . . If a house be destroyed by tempest, lightning, or the like, which is the act of providence, it is no waste; but, otherwise, if the house be burnt by the carelessness or the negligence of the lessee; though now by the statute of 6 Ann. c. 31 no action will lie against a tenant for an accident of this kind.

Sir William Holdsworth, in his most authoritative *A History of the English Law*, vol. VII, pp. 276, 277, discusses this subject, saying, in part, as follows:

> Permissive waste.--We have seen that the medieval statutes, which regulated waste, left it somewhat uncertain whether or not a lessee for life or years was liable for permissive waste. Most of the cases seem to postulate some positive act of voluntary waste; and to require the commission of a positive wrongful act was in harmony with the medieval principles of liability for wrongdoing.

About the time of the American Revolution the learning in England was that a tenant for years was not liable for permissive waste. See note 9 to Holdsworth, *pl. cit.*

It is said that our statute patterned after the statute of Gloucester is that entitled "An Act Concerning Waste," passed December 26, 1792. The Revised Code of

Virginia, vol. 1, p. 462. See *Dejarnette* v. *Allen & Wife*, 46 Va. (5 Gratt.) 499 (1849). By this statute tenants by the curtesy, in dower, "or otherwise for a term of years," tenants in common, and guardians were made liable for waste, not specifying whether permissive or voluntary. Nor do I find any case saying whether this statute was intended to apply only to persons coming into possession by operation of law, as distinguished from act of the parties. It would appear to be aimed at those situations where the person in reversion had no means of insisting on a proper covenant.

Certainly our law makers and courts of that time were familiar with the two leading cases on this subject of alleged negligent fires. The first of these is *Lady Shrewsbury's Case*, 5 Co. Rep. 13b, 77 Eng. Rep. 68, in which the following was said:

> And the reason of the judgment was, because at the common law no remedy lay for waste, either voluntary or permissive against the lessee for life or years, because the lessee had interest in the land by the act of the lessor, and it was his folly to make such a lease, and not restrain him by covenant, condition, or otherwise, that he should not do waste.

The second of these two leading cases is that of the *Countess of Salop* v. *Crompton*, Cro. Eliz. 777, 78 Eng. Rep. 1007, where it was again said:

> But all the Courts held in this case, that for the negligent burning, this nor any action lies; for he comes in by act of the party, and it was his folly that he did not provide for his remedy.

None of the few cases construing our present Code Section 55-211, which is general, i.e. "any tenant of land," the most recent of which would appear to be *Kavanaugh* v. *Donovan*, 186 Va. 85 (1947), throw any light on our problem. In *Burton* v. *Chesapeake Box, etc., Corp.*, 190 Va. 755 (1950), the landlord had claimed that the fire was due to the lessee's negligence, but he brought

his action in assumpsit and lost, there being no language in the lease showing the intent of the parties that the tenant should be bound to repair fire damage, within the intent of Code Section 55-226. Waste was not discussed; but would it not be shocking to say that he could prevail in an action of waste?

We have no statute similar to 6 Anne, c. 31 (1707), later enacted as 14 Geo. III, c. 78, sec. 86 (1774), the latter of which was, in part "That no Action, Suit or Process whatever, shall be had, maintained or prosecuted against any Person in whose House. . . or other Building . . . any Fire shall. . . accidentally begin. . . provided that No Contract or Agreement made between Landlord and Tenant shall be thereby defeated, or made void." Is it not reasonable to assume that our Legislature has always assumed that a lessee, in by act of the parties, is not liable for an accidental fire, construing the word "accidental" as used in Mr. Hargrave's Notes and in Blackstone to embrace a burning caused by a mere act of omission, hence that no statute is needed? In other words, is it not still the law that a landlord, who has it in his power to require a special covenant, but takes none, is the "victim of his own folly?"

My conclusion is that a mere negligent fire amounts to no more than permissive waste for which the landlord has no cause of action in tort against his tenant. I am supported in this view, I believe by the language of Staples, J., in *Moses* v. *Old Dominion Iron and Nail Works Company*, 75 Va. 95, at pp. 99-101 (1880), where he says that a tenant is liable for waste from accidental causes only if he has entered into a covenant to repair, adding, as follows:

> Where, however, the tenant is guilty of voluntary waste, whereby his act injury is done to the reversioner, then the lessor may bring his action during the lease.

In *Kavenaugh* v. *Donovan*, *supra*, at p. 92, which was a tort action, the text in 32 Am. Jur., *Landlord and Tenant*, sec. 779, p. 665, is cited with apparent approval. It is there said that "'If, by the negligence or misfeasance of a tenant, the demised property is materi-

ally injured, he is liable for the resultant damages'." If this be the modern law of waste applicable to our case, a very startling thought, indeed, then one next inquiry is whether or not Mr. Bragg was guilty of negligence. I shall not go into this aspect of the case in any great detail.

There is a most comprehensive Annotation entitled "Liability of tenant for damage to the leased property due to his acts or neglect" found in 10 A.L.R.2d 1012. I am frank to say that under Section 8 of the note the author states that a lessee is liable for fire damage "due to his wrongful act or negligence" (at p. 1023), citing many cases. It would be with great reluctance, absent a decision of our Court of Appeals or an Act of our Legislature, that I would bring this statement of the law to the complete exoneration of a fire insurance company. After all, the tenant is paying a rack rent, which includes the fire insurance premium. Indeed, in this case, the company wants a profit, having made claim against the landlord and settled for $500.00. The sub-tenant here inquired of his liability carrier as to whether he had insurance to take care of this claim and was advised that he did not. Assuming that such insurance can be purchased, could any tenant ask his landlord to reduce the rent by that amount, or must he bear the cost of both?

The author of the Annotation cited quotes from the language of Atkin, Ld. J., in *Marsden* v. *Edward Heyes, Ltd.*, (1927) 2 K.B. 1, 53 A.L.R. 42, as follows (at p. 1014):

> "The precise obligation of such a tenant in relation to the premises has been the subject of discussion for over a century, and I am not sure that the obligation can be satisfactorily defined, for it must depend upon the relations between the parties, the character and state of the demised premises, and other varying circumstances."

The few Virginia cases cited in the notes to 11 M. Jur., *Landlord and Tenant*, sec. 33, pp. 689, 690, none of which involve fire and all of which involved

alleged voluntary waste, go into the condition of the demised premises and the proposed use to be made thereof.

The premises here involved were leased to be used as a filling station and auto repair shop. The facilities were far from modern. There was no lift. In removing the gasoline tank from the automobile, repairing and replacing it Mr. Bragg did the only thing he could do. He drained the gasoline into two shallow pans then replaced it. True, by hindsight, it would have been safer had he placed the recently emptied pans outside the building; but what he did was no more than what the landlord could have anticipated. The reason the drop cord bulb fell is not shown. Nor do I feel that the first paragraph of Section 15-201 of the Richmond City Code is applicable. The word "transfer" is there used in connection with the fueling of automobiles, not repair work. I feel, therefore, that no negligence has been proven in this case.

I have examined defendants' Motion for Summary Judgment and find it to be without merit. It is settled law that if the landlord conveys the reversion after the tenant commits waste the claim for waste remains with the former owner. As for the style of the suit it could have been brought in the name of the real plaintiff, but I do not believe that this was necessary. As for paragraph (5) of the Grounds of Defense this could very possibly have merit. See Annotation 51 A.L.R.2d 697. But I do not find it necessary to decide this.

I have this day entered final judgment in favor of the defendants.