**BOARD OF COUNTY SUPERVISORS OF PRINCE WILLIAM COUNTY, VIRGINIA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 90–364L.

United States Claims Court.

June 3, 1991.

* This ruling renders consideration of defendant's    argument concerning estoppel unnecessary.

206

Sharon E. Pandak, Prince William County, Va., for plaintiff.

Deputy Chief James E. Brookshire, Washington, D.C., with whom were John S. Gregory, Alan Brenner, and Donald Rosendorf, Washington, D.C., for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge.

This case is before the court on defendant's motion for partial dismissal pursuant to RUSCC 12(b)(4), for failure to state a claim upon which relief can be granted. For the reasons set forth below, the court grants defendant's motion.

## FACTS

In 1986, Hazel–Peterson Companies (Hazel) acquired approximately 542 acres of property near Manassas in Prince William County, Virginia (Prince William Tract), for approximately $9.8 million. This property adjoined the Manassas Battlefield Park and, at the time of the purchase, was zoned agriculture (A–1). The park, as is known by every student of American history, was the site of a major battle during the Civil War.

Following acquisition of the Prince William Tract, Hazel applied to plaintiff, Board of County Supervisors of Prince William County, Virginia, requesting that plaintiff rezone the property from A–1 to a Planned Mixed Use District (PMD). PMD permits a mixture of residential and commercial uses within the rezoned property. Under state law, plaintiff is charged with legislative control of land use in Prince William Coun-

ty through zoning and other land use regulations. Through zoning ordinances, plaintiff establishes various zoning districts in the County which regulate the use to which property in each zoned district can be put. On November 18, 1986, plaintiff granted Hazel's request. *See Prince William County Rezoning # 86–61*, ORD. No. 86–173, Nov. 18, 1986.

As a condition to rezoning, Hazel voluntarily and unilaterally made certain proffers—offers of conditions or undertakings that the County deemed sufficiently mitigating of possible developmental impacts to warrant conditional rezoning—which would be included in the zoning ordinance in addition to the general conditions of the PMD. Under Virginia law, plaintiff is authorized to accept voluntary proffers as part of an amendment to the zoning ordinance. Va.Code Ann. § 15.1–491(a) (1982). In fact, there is a school of thought that believes that the "proffer system" has developed informally in county land use regulation and politics to a point where no substantive amendments to county zoning can be achieved in the absence of acceptable proffers. There is no question but that Hazel's proffers were significant, as it agreed to provide the following:

—natural and all weather trails;
—a community swimming pool center;
—two tennis courts;
—two multi-purpose courts;
—a multi-purpose ball field;
—design and installation of sewer and water facilities to serve subject property and Little Bull Run Watershed to the north;
—a $2 million contribution for a proposed Route 234 Bypass with Interstate 66 at the southwestern edge of the property;
—the widening of various roads planned to connect with the development to be dedicated to the county; and
—five acres of property for a fire station and a commuter parking lot.

In addition to the proffers, Hazel dedicated to plaintiff approximately 13 acres of land in fee and certain easements.[1] Plaintiff

rezoned the property on November 18, 1986.

Hazel's original plan called for development of residential areas, an office park, and a strip shopping center of approximately 120,000 sq. ft. However, less than a year after the rezoning, Hazel announced plans to build a regional mall of approximately 1.2 million sq. ft. This, in turn, led to the formation of a grassroots "Save the Battlefield" coalition which opposed any further development around the Manassas Battlefield site based on the concern that a large mall development would destroy the solemn character of the site.

On November 10, 1988, the United States Congress, in response to the coalition movement, enacted the Manassas National Battlefield Park Amendments of 1988 (Act). *See* Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, 102 Stat. 3342, 3810 (codified as the Manassas National Battlefield Park Act, 16 U.S.C. § 429(b) (1991)). The Act vested in the United States all right, title, interest, and immediate possession of certain land, effecting a legislative taking by eminent domain of property which included the Prince William Tract. The Act provided for payment of just compensation to the owners of any property interest taken, as mandated by the fifth amendment.

Between the November 18, 1986 rezoning, and the November 10, 1988 taking, Hazel performed some development on the commercial and residential projects. As of the date of the taking, construction was limited to various incomplete sewer and water improvements, partially completed housing lots, and partially completed roadways. In total, Hazel expended approximately $8.5 million on infrastructure development. Plaintiff claimed that the proffers constituted "property" under the takings provision of the fifth amendment to the Constitution and, as a result of the taking, it lost the benefit of Hazel's proffers, entitling it to just compensation.

1. These easements and dedications are not part of defendant's motion for partial dismissal.

## DISCUSSION

Plaintiff claimed that proffers accepted under a Virginia zoning ordinance constitute private property for which defendant must pay compensation. The court believes this to be a case of first impression.

### A. Proffers Are Not A Property Interest.

■ The Act expressly provided that the government would pay "just compensation" for any "property" taken. Under the literal terms of the Act, in order for plaintiff to be entitled to just compensation, it must show it had a property interest which the government took. However, not every destruction or injury to property by governmental action is a taking in the constitutional sense. *Omnia Commercial Co. v. United States,* 261 U.S. 502, 508–510, 43 S.Ct. 437, 437–438, 67 L.Ed. 773 (1923). Therefore, the court must determine what, if any, compensable property right plaintiff possessed, and whether the government "took" that property.

■ "Property," as employed in the fifth amendment takings clause, includes every interest any individual may have in any and everything which is the subject of ownership, together with the right to possess, use, enjoy, and dispose of the same. *United States v. General Motors Corp.,* 323 U.S. 373, 377–78, 65 S.Ct. 357, 359–60, 89 L.Ed. 311 (1945). The reference to private property in the takings clause encompasses condemned property of state and local governments because the loss of a public facility may be "no less acute than the loss in a taking of private property". *United States v. 50 Acres of Land,* 469 U.S. 24, 31, 105 S.Ct. 451, 455–56, 83 L.Ed.2d 376 (1984). The court ultimately must determine what constitutes property by reference to state law. *United States ex rel. T.V.A. v. Powelson,* 319 U.S. 266, 279, 63 S.Ct. 1047, 1054–55, 87 L.Ed. 1390 (1943); *United States v. Causby,* 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946); *see also Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Virginia has construed broadly those interests which may be compensable. "In contemporary jurisprudence, 'property' refers to both the actual physical object and the various incorporeal ownership rights in the *res,* such as the rights to possess, to enjoy the income from, to alienate, or to recover ownership from one who has improperly obtained title to the *res." First Charter Land Corp. v. Fitzgerald,* 643 F.2d 1011, 1014–15 (4th Cir.1981).

■ Plaintiff claimed that because it had a "legitimate claim of entitlement to benefits deriving under Virginia law in the proffers," those benefits constituted private property. However, in order to find that plaintiff is entitled to compensation for the proffers, plaintiff must prove, and the court must accept, plaintiff's contention that it received a property interest in the proffers that inured to it at the time of rezoning. Plaintiff failed to provide a basis grounded in property law to support this claim.

Pursuant to Virginia law, plaintiff accepted the proffers as part of district rezoning. Va.Code Ann. § 15.1–491(a) (1982). This section sets forth those counties that can utilize enabling authority with respect to proffered rezoning. The statute provides that, as part of an amendment to the zoning map, a county may adopt:

> reasonable conditions, in addition to the regulations provided for the zoning district by the ordinance, when such conditions shall have been proffered in writing, in advance of the public hearing before the governing body required by § 15.1–493 by the owner of the property which is the subject of the proposed zoning map amendment. Once proffered and accepted as part of an amendment to the zoning ordinance, such conditions shall continue in full force and effect until a subsequent amendment changes the zoning on the property covered by such conditions[.]

*Id.* Conditional zoning provides zoning authorities with added flexibility. In situations where rezoning otherwise would effect an unacceptably drastic change, conditional rezoning mitigates the impacts to an acceptable level by adding certain use limitations, or conditions, *i.e.,* proffers.

The court does not agree with plaintiff that these proffers, once accepted, "conferred on Prince William County and its citizenry certain rights and benefits which constitute private property." The court, in interpreting a zoning ordinance, "is controlled by the principle that words in common use must be given their plain and natural meaning in the absence of any showing that such words were used in any other than their usual and ordinary sense." *McClung v. County of Henrico County*, 200 Va. 870, 875, 108 S.E.2d 513, 516 (1959). Under the plain meaning of the Virginia statute, plaintiff's acceptance of the proffers resulted in legislative amendments to the zoning of a specified parcel of property. *See Rinker v. City of Fairfax*, 238 Va. 24, 29, 381 S.E.2d 215, 217 (1989). The state statute authorizes the local government to accept proffers in addition to general uniform regulations within a zoning district. If accepted, the restrictions become a part of the zoning regulatory framework for the property. Proffers become binding development restrictions on the developer until subsequent rezoning, or, as a matter of practicality, until development is stopped. Here, Congress' legislative taking precluded the planned development of the property. The National Park Service now manages the property, under federal title, as a federal park. The conditional zoning, along with the impacts that would justify that zoning, simply ceased to exist as of the date of the taking; they were not taken.

Admittedly, proffers may do more than merely mitigate the impacts of a specific proposed development. The regulatory power of the county "is not limited to regulations designed to promote public health, public morals or public safety ... but extends to so dealing with conditions which exist as to bring out of them the greatest welfare of the people...." *West Bros. Brick Co. v. County of Alexandria*, 169 Va. 271, 282, 192 S.E. 881, 885 *appeal*

*dismissed*, 302 U.S. 658, 58 S.Ct. 369, 82 L.Ed. 508 (1937), *reh'g denied*, 302 U.S. 781, 58 S.Ct. 480, 82 L.Ed. 603 (1938). Developers may proffer certain conditions that represent property interests. However, a proffer, in and of itself, cannot be a property interest.

Plaintiff attempted by syllogism to convince this court that the proffers are property, arguing as follows:

> Plaintiff seeks compensation only for those proffers it believes constitute interests in land. In particular, plaintiff claims compensation, *inter alia*, for walking trails, a swimming pool, tennis courts and 5 acres of land. The conditions proffered are property interests. Therefore, proffers of those conditions necessarily must be property interests.

This argument is disingenuous. Proffers confer only those legislative expectancies existing in the zoning amendment itself. Zoning ordinances, and other government regulations controlling land development, are governmental restrictions, not the government's property. The restrictions governed Hazel's proposed development, and were not given unconditionally. Once the taking precluded the planned development, the restrictions no longer were relevant, and plaintiff's reasons for requiring the proffers became a nullity, thereby dissolving any "rights" plaintiff eventually might have accrued. The language of Hazel's proffers, cited by plaintiff, supports this conclusion. Hazel's "development of the subject property [was] subject to the" proffers. This language fairly supports an interpretation that, once the development was cancelled, the proffered conditions no longer were required.[2]

Plaintiff alternatively claimed that its situation is akin to materialmen liens "taken" by the government. Plaintiff cited to *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) for the

---

**2.** Plaintiff argued that Hazel's $8.5 million expenditure on infrastructure development caused Hazel's rights under the conditional zoning to vest, thereby divesting plaintiff of any unilateral power to rezone. Therefore, plaintiff argued, its "rights" to the proffers also had vested. If

Hazel's rights had, indeed, vested, a finding the court need not reach here, plaintiff could have enforced its zoning ordinances against Hazel. However, as discussed more fully *infra* section E, plaintiff cannot enforce its zoning ordinances against the United States.

proposition that the proffers attached by operation of law, and became a compensable property interest. In *Armstrong*, the Court upheld the right of materialmen to collect the value of unrecorded liens on vessels taken by the government. Liens represent an interest in the underlying property, and attach directly to the underlying property. Perfected liens represent a recognized property interest. Proffers are not recognized property interests. In the case of a materialmen's lien, the contractor has provided materials and performed work on the property. The property acts as a security interest for the work performed to assure payment by the owner. In this case, Hazel performed work on the Prince William Tract, but the Tract was not a security interest for the proffers. Plaintiff merely performed the legislative function of rezoning the land as conditioned by the proffers, but performed no work creating a lien which attached to the property through a security interest.

Therefore, the court finds that plaintiff did not have a vested property interest in the proffers. Although the court thinks this dispositive, it will address plaintiff's argument that the proffers represent, or are sufficiently analogous to previously recognized property interests. Specifically, plaintiff alleges that either:

1) Its acceptance of the proffers in conjunction with rezoning constituted a valid dedication; or

2) Its interest was sufficiently analogous to a restrictive covenant to find a property interest.

The court will address each of these allegations in turn.

## B. Proffers Do Not Constitute A Valid Dedication.

▬ Plaintiff claimed that once it granted the rezoning, it was able to exercise ownership rights over the proffers. In essence, a dedication took place. The court does not agree. A dedication is the setting aside of land, or of an interest therein, to the public use; or a form of transfer by an owner to the public of a fee or lesser interest in land. *City of Norfolk v. Meredith*, 204 Va. 485, 489, 132 S.E.2d 431, 434

(1963). Under Virginia law, in order to effect a dedication, the owner must have specific intent to dedicate an interest manifested by some unequivocal act. *Greenco v. City of Virginia Beach*, 214 Va. 201, 204, 198 S.E.2d 496, 498 (1973). Plaintiff argued that Hazel's proffers, and plaintiff's subsequent acceptance via the granted rezoning, represented unequivocal acts. Accepting this allegation, *arguendo*, the court finds that Hazel lacked the requisite intent needed to dedicate the proffered interests.

Where Hazel intended to dedicate property interests to plaintiff, it did so explicitly through signed deeds of dedication which were made separately from the proffers. While recognizing that the proffers also were signed documents, the court is not persuaded by plaintiff's argument that the proffers, given pursuant to the zoning laws, amounted to dedications. By making proffers, rather than definitively dedicating the interests, Hazel recognized that in the event plaintiff granted its request for rezoning, the proffers would be mandatory conditions for developing the property. However, plaintiff conceded that at the time it accepted the proffers, it maintained its ability to rezone the property unilaterally. *See* Va.Code Ann. § 15.1–491(a). Therefore, Hazel could not have considered its proffers "dedications" knowing, as it did, that plaintiff later could rezone.

The Virginia legislature explicitly created separate laws for the treatment of proffers and dedications. Hazel chose to dedicate some interests, but to proffer others. This court will not second guess the legislature, or Hazel, and therefore finds that proffers are not equivalent to dedications.

## C. Proffers Are Not Sufficiently Analogous To Restrictive Covenants To Constitute A Property Interest.

▬ Plaintiff claimed that proffers are analogous to restrictive covenants and therefore are compensable because under Virginia law, restrictive covenants are compensable property if taken by eminent domain. *Meagher v. Appalachian Elec. Power Co.*, 195 Va. 138, 144, 77 S.E.2d 461,

465 (1953). In deciding plaintiff's claim, the court first must examine Virginia law with respect to restrictive covenants. The term restrictive covenant universally signifies an agreement between two parties restricting the use of property or prohibiting certain uses. *Black's Law Dictionary* 1182 (5th ed. 1979). Land use covenants create rights and duties between the original promising parties. The covenantee's rights are called the benefit of the covenant, while the covenantor's duties are considered the burden of the agreement. 5 Powell, *The Law of Real Property* ¶ 670[2] (1990). If certain strict requirements are met, either the benefit or the burden may devolve on a successor to the property interest of either the covenantee or covenantor. When the benefit or burden devolves, it is said to "run with the land." *Id.* Otherwise, the covenant is considered personal between the parties, and will not devolve to any successors to the property. Under Virginia law, a restrictive covenant exists if the covenant touches and concerns the land, there is privity of estate, and the parties intended the covenant to run with the land. *Net Realty Holding Trust v. Franconia Properties, Inc.*, 544 F.Supp. 759, 762 (E.D.Va.1982).

Defendant argued that the proffers were not restrictive covenants but personal rights which did not attach to any particular estate in Hazel's property. The court must determine whether a covenant is a personal right, or attaches to a particular estate, by the fair interpretation of the grant aided, if necessary, by the situation of the property and the surrounding circumstance. *See, e.g., Burton v. Chesapeake Box & Lumber Corp.*, 190 Va. 755, 57 S.E.2d 904 (1950). Had Hazel sold the property at issue, any new owner would have taken title subject to the proffers, and would have been permitted to develop the land only in accordance with the zoning. Proffers are noted in official zoning maps, can be recorded, and affect title. Therefore, the court does not believe that the proffers merely were collateral to the land, but that they did "touch and concern" the land.

However, in order for a covenant to run with the land, there must be privity of estate. Privity describes a relationship that must exist between the parties to a covenant. In Virginia, there must be mutual tenurial privity between the parties in order for real covenants to run with the land. 5 Powell, *The Law of Real Property* ¶ 673[2]. The concept of mutual tenurial privity arose from English common law under which the original covenantor, and his successors, were tenants of the landlord/covenantee. *See Spencer's Case*, 77 Eng.Rep. 72 (QB 1583). The most demanding view of privity of estate, which Virginia follows, requires that this landlord-tenant relationship exist in order for the covenant to run with the land. *See Tardy v. Creasy*, 81 Va. 553 (1886). The court cannot construe the relationship between plaintiff and Hazel as tenurial. Defendant is the owner of the property interest; plaintiff regulates that interest. Therefore, the court does not find the requisite privity of estate between plaintiff and Hazel. The court agrees with defendant that the proffers more closely are akin to affirmative covenants which are created when the covenantor promises to perform an act upon his land which benefits land owned by the covenantee. *See* Clark, *Real Covenants and Other Interests Which "Run With Land"* 97 (2d ed. 1947). Virginia follows the rule that the burdens of affirmative covenants do not run with the land, and therefore are not compensable property interests. *Id.* at 231.

This court recognizes that plaintiff did not claim that proffers are, in fact, restrictive covenants, but that they closely resemble restrictive covenants. In effect, plaintiff asked this court to find that a proffer is equivalent to an equitable servitude. An equitable servitude is a covenant that is enforceable in an action in equity. As opposed to real covenants which are said to run with the land, an equitable servitude is treated as if the land itself had become burdened with the covenant. *See* Powell, *supra* at § 675[1]. Therefore, the covenant is enforced in equity regardless of whether the parties have met the strict

requirements needed to enforce a real covenant.

■■■ Equitable servitudes were created from the experience that the formalism of the rules for restrictive covenants were too narrow in their application. *Cheatham v. Taylor*, 148 Va. 26, 38–39, 138 S.E. 545, 549 (1927). However, covenants, express or implied, restricting the free use of land are not favored, and must be construed strictly. *Mid–State Equip. Co. v. Bell*, 217 Va. 133, 140, 225 S.E.2d 877, 884 (1976). The law places the burden on the party seeking the benefit of those conditions to prove that they apply. *Id.* In order to find that an equitable servitude exists, the intent of the parties, especially that of the common grantor, determines the existence of the right. *See Minner v. City of Lynchburg*, 204 Va. 180, 187, 129 S.E.2d 673, 678 (1963). Plaintiff did no more than discuss, in general terms, the reasons this court should find that an equitable servitude exists, *i.e.*, equitable servitudes and proffers both are promises. Plaintiff pointed to no authority, nor has the court been able to find any, to sustain the contention that a zoning ordinance may be considered an equitable servitude. Additionally, while equitable servitudes may be broader than restrictive covenants, they generally are enforced through injunctive relief, not monetary damages. The court is unwilling to find that the proffers are sufficiently analogous to either restrictive covenants, or equitable servitudes, to sustain plaintiff's claim.

### D. Conditional Zoning Ordinances Are Not *Ultra Vires*.

■■■ In Virginia, the state legislature "may confer the police power of the state upon cities and towns." *Gorieb v. Fox*, 145 Va. 554, 561, 134 S.E. 914, 916 (1926), *aff'd*, 274 U.S. 603, 47 S.Ct. 675, 71 L.Ed. 1228 (1927). By allowing the county to regulate land use, the legislature delegates part of its police powers. *See National Realty Corp. v. City of Virginia Beach*, 209 Va. 172, 174–75, 163 S.E.2d 154, 156 (1968). However, the county's powers are created by statute, and are limited to those conferred expressly, or by necessary implication. *Hylton Enters. v. Board of Supervisors of Prince William County*, 220 Va. 435, 440, 258 S.E.2d 577, 581 (1979). Rather than treat the proffers merely as conditional zoning ordinances, plaintiff would have this court find that the proffers created a property interest which matured upon the rezoning of the Prince William Tract. Defendant argued that this theory for finding a property interest rests on contract zoning which is *ultra vires* (beyond the scope of plaintiff's legislative power) and *void ab initio* (an agreement which is null from the start).

■■■ Impermissible contract zoning results from a legislative authority bargaining away its zoning power. Under plaintiff's theory, the proffers constituted the developer's consideration in a bargained-for exchange of plaintiff's rezoning approval. Defendant argued that, if plaintiff's interpretation is correct, plaintiff accepted the proffers in exchange for not enforcing its police powers because if the "property interest" matured upon rezoning, plaintiff would have surrendered its ability subsequently to rezone the Prince William Tract.[3] Contracts that impinge upon legislative or police powers are void. *See Mumpower v. Housing Auth. of City of Bristol*, 176 Va. 426, 452, 11 S.E.2d 732, 742 (1940). Therefore, if the court accepts plaintiff's interpretation, it would have to find that plaintiff engaged in *ultra vires* activity.

The express arrangement—proffers in exchange for rezoning—presents a strong argument for characterizing this relationship as a contract. However, these agreements are adopted within the context of legislation that uses only regulatory language, and that does not give rise to contractual duties or obligations on the part of the governing body. The county cannot be

---

**3.** Although plaintiff did not concede that, by accepting proffers, it gives up its ability to rezone, that would be the practical result of a "matured interest" unless plaintiff were to claim it has rights to the proffers even upon subsequent rezoning. That certainly cannot be what plaintiff intended.

presumed to cede away its regulatory authority upon accepting the proffers, therefore the proffers cannot be property interests which vested upon rezoning. No matter how favorably it interprets the Virginia zoning laws for plaintiff, the court cannot find that the State intended proffers to be anything more than conditions for local zoning ordinances. In so holding, this court recognizes plaintiff's need to be able to tailor land use requirements closely to the characteristics of particular parcels of land. Local governing bodies, because of their knowledge of local conditions and the needs of their individual communities, must be allowed wide discretion in the enactment of zoning ordinances. *Accord Byrum v. Board of Supervisors of Orange County,* 217 Va. 37, 39, 225 S.E.2d 369, 371 (1976). Therefore, this decision in no way stands for the proposition that conditional zoning under Virginia law is *ultra vires* and *void ab initio.*

E.   Supremacy Clause.

■   Defendant argued that the federal government took the Prince William Tract free of the local zoning ordinances, and that federal land uses are not subject to state or local land use laws, including zoning regulations, because of the superiority of the federal government over the states and their potential subdivisions, *i.e.,* the Supremacy Clause of the United States Constitution, article VI, clause 2. *See* 6 Rohan, *Zoning and Land Use Controls,* ¶ 40.03(1)(a). Plaintiff contended that the Supremacy Clause is not implicated in this case and argued that, while the federal government need not go through a rezoning process in order to use the land as a national park, it is not exempt from conditions existing on the property at the time it took ownership. Plaintiff based this argument on the premise that proffers constitute property interests. Because the court has held that proffers are not property interests, plaintiff, were it to receive compensation from defendant, in effect, would be enforcing its zoning ordinance against the federal government.[4] This, plaintiff cannot do. *See, e.g., Washington & O.D. R.R. v. City of Alexandria,* 191 Va. 184, 191, 60 S.E.2d 40, 44 (1950).

■   Federal law preempts state law in three circumstances: 1) where Congress explicitly so provides; 2) where a state regulates conduct in a field that Congress intended to occupy exclusively; and 3) state law is preempted to the extent it actually conflicts with federal law. *English v. General Elec. Co.,* — U.S. —, 110 S.Ct. 2270, 2274–75, 110 L.Ed.2d 65 (1990). Plaintiff's claim falls within the third situation above. Plaintiff argued that, because the Act did not expressly deal with the zoning issue, the rule is not applicable. That argument is without merit. "Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent that there is a 'clear congressional mandate,' [or] 'specific congressional action' that makes this authorization of state regulation 'clear and unambiguous.'" *Hancock v. Train,* 426 U.S. 167, 179, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976) (footnotes omitted). The intent of the Act was to create a National Battlefield Park. Nothing in the Act suggests that defendant acquiesced to the County's local zoning powers on the federal park land. Absent "clear and unambiguous" intent to subject the land to local zoning ordinances, defendant simply is not subject to the regulations. This case presents a direct conflict between the County's local zoning ordinance, and the government's Act.

Plaintiff also argued that the United States "came to the property as a landowner [and] not a regulator." *See Fort Leavenworth R.R. & Co. v. Lowe,* 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885). While that is true, it does not overcome the fact

---

**4.** Plaintiff as much as admitted this when it argued that Va.Code Ann. § 15.1–491(d) permits it to *enforce* its proffers through suits for civil damages, and by citing *Board of County Supervisors of Prince William County v. Sie-gray Developers, Inc.,* 230 Va. 24, 334 S.E.2d 542 (1985) for the proposition that, where a landowner voluntarily agrees to make certain improvements and fails to do so, the county can *enforce* completion.

that plaintiff cannot enforce its zoning ordinances on federal land. *See Kleppe v. New Mexico*, 426 U.S. 529, 539, 96 S.Ct. 2285, 2291–92, 49 L.Ed.2d 34 (1976). When Federal law and State law conflict, Federal law must prevail.

## CONCLUSION

The burden of proof was upon plaintiff, and it made an extraordinary effort to convince the court that a proffer is a property right, but failed. The court applauds the effort, but must rule in favor of defendant. For the reasons set forth above, the court grants defendant's motion for partial dismissal.

IT IS SO ORDERED.